**Adamina DEJESUS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. B14–92–00596–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 18, 1994.

Rehearing Overruled Sept. 22, 1994.

Don Ervin, Houston, for appellant.

Dan McCrory, Houston, for appellee.

Before SEARS, LEE and JUNELL (sitting by assignment), JJ.

## OPINION

SEARS, Justice.

Appellant was charged by a five count indictment with the offense of sale of a child. She was tried with her co-defendant, Leslie Thacker, an attorney, who was indicted for the offense of "purchase of a child." [1] The jury found Appellant guilty, and the trial court assessed punishment at 60 years confinement in the Texas Department of Criminal Justice—Institutional Division. Appellant raises four points of error on appeal. We affirm.

■■■■ A person commits the offense of "sale of a child" if she: (1) possess a child or

has custody, conservatorship or guardianship of a child, whether or not she has actual possession of the child; and (2) offers to accept, agrees to accept or accepts a thing of value for the delivery of the child or for the possession of the child by another for purposes of adoption. TEX.PENAL CODE ANN. § 25.11(a)(1) (Vernon 1989). Section 25.11 prohibits accepting compensation for the delivery of a child, unless that compensation is a fee legally paid to a child-placing agency, a fee paid to an attorney or physician for services rendered, or a reimbursement of legal or medical expenses incurred for the benefit of the child. TEX.PENAL CODE ANN. § 25.11(b) (Vernon 1989).

■■■ In her second point of error, Appellant contends that the evidence is insufficient to prove that the payments she received from ° Leslie Thacker were "compensation" for the delivery of her children.[2] The evidence is viewed in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979); *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988). We have thoroughly reviewed the record, and conclude that the evidence is sufficient to support the verdict.

Adamina DeJesus has been a prostitute and a drug user, and commonly lived on the streets. By 1989, she had given birth to five children, none of whom she chose to raise. At the age of fifteen, she gave birth to Manuel. He was left to the care of his grandparents, and when they died, eventually to the care of an aunt and uncle. Daniel, her second child, was given to a friend. Her third child, Adamina, was given to a second cousin,

---

1. See, *Thacker v. State*, 889 S.W.2d 380 (Tex. App.–Houston [14th Dist.] 1994, no pet. h.).

2. We make two initial notes: (1) Appellant's point of error is worded that "the trial court erred in not instructing the jury to find Appellant not guilty as to those counts of the indictment on which Appellant moved for an instructed verdict." A challenge to a trial court's ruling on a motion for instructed verdict is in actuality a challenge to the sufficiency of the evidence.

*Madden v. State*, 799 S.W.2d 683, 686 (Tex.Crim. App.1990). Therefore, we will review this point as a sufficiency point; (2) Appellant asserts that the evidence is insufficient because some of the evidence admitted was irrelevant and inadmissible. When evaluating the sufficiency of the evidence, an appellate court must look at all of the evidence, whether properly or improperly admitted. *Bobo v. State*, 843 S.W.2d 572, 575–576 (Tex.Crim.App.1992); *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex.Crim.App.1991).

Juanita Medrano, when the child was four or five months old. Her next two children, Isaac and Meriebel, were left to the care of Louise Martinez, a friend of the family.

In early 1990, Appellant was in jail and pregnant with twins. Juanita Medrano, who was raising Adamina, offered to take care of the twins when they were born, and to adopt them and Adamina. Appellant agreed, and promised her daughter, Adamina, that she would have a brother or sister to live with her at Juanita's house. Instead of keeping her promise, Appellant contacted Leslie Thacker.

In mid-March of 1990, Leslie Thacker met with Appellant. On April 19, 1990, Ms. Thacker bonded Appellant out of jail. On April 21, 1990, the twins were born. The next day, Appellant relinquished her parental rights to the twins, and to Isaac, age two, and Meriebel, age four. Approximately a month later, she signed a relinquishment of her parental rights for Adamina. Each relinquishment was followed by a series of cash payments from Ms. Thacker to Appellant. Ms. Thacker noted the payments in her check ledger either with the name of the recipient or the "code number" of Appellant. Ms. Thacker kept a "code book" of assigned code numbers which corresponded to various birth mothers. Those numbers would often appear in the "memo" area of Ms. Thacker's checks or in her check register. In this case, Appellant was given the code numbers "387" and "395".

Between April 19, 1990 and May 27, 1990, over ten thousand dollars in payments were made, either directly or indirectly, by Leslie Thacker to Appellant. The following table helps to demonstrate the timing of the payments and the relinquishments:

| DATE | ACTIVITY |
|------|----------|
| (1) 4/19/90 | $650.00 check paid to bail bond company for release of Appellant |
| (2) 4/22/90 | **Appellant signs relinquishment of parental rights for twins, and for Isaac, 2, and Meriebel, 4.** |
| (3) 4/22/90 | Thacker gives Appellant $100.00 in cash |
| (4) 4/23/90 | Thacker cashes a $2500.00 check; check ledger indicates that check was for "Adamina." |
| (5) 4/26/90 | Thacker cashes a $2000.00 check; memo area of the check indicates that check was for code number "387"—the code number for Appellant; check ledger also indicates that check was for code number "387." |
| (6) 4/26/90 | Thacker cashes a $500.00 check; check ledger indicates that check was for code number "387"—Appellant's code number. |
| (7) 5/01/90 | **Thacker obtains temporary custody of Isaac and Meriebel; Court approves adoption of twins by Robersons.** |
| (8) 5/03/90 | Thacker tenders $800.00 check to Raymond Licerio; Licerio testifies that check was cashed and all of the money given to Appellant. Licerio testified the checks were made out to him so that he could cash them and give Appellant the money, because Appellant had no adequate identification to cash checks made payable to her. |
| (9) 5/11/90 | Thacker tenders $400.00 check to Raymond Licerio; Licerio testifies that check also was cashed and the money given to Appellant. |
| (10) 5/18/90 | **Appellant signs relinquishment of parental rights for her daughter Adamina.** |
| (11) 5/18/90 | Thacker tenders two $400.00 checks to Raymond Licerio; Licerio testifies those checks were cashed and the money given to Appellant; check ledger indicates that checks were for "Adamina DeJesus." |
| (12) 5/19/90 | Thacker cashes a $2500.00 check; check ledger indicates that check was for "Adamina." |
| (13) 5/27/90 | Thacker tenders a check for $500.00 and another check for $116.00 to Raymond Licerio; Licerio testifies that money was given to Appellant; check ledger indicates that checks were for "Raymond/Adamina." |

■ None of these payments were lawful payments. The penal code only authorizes: (1) fees paid to a child-placing agency which are authorized by law; (2) fees paid to an attorney or physician for services rendered; or (3) reimbursement of legal or medical expenses incurred for the benefit of the child. TEX.PENAL CODE ANN. § 25.11(b) (Vernon 1989). Chris Ros–Dukler, the director of licensing for the Texas Department of Human Resources, testified that agencies may provide *services* and *assistance* to birth mothers, so long as that assistance is not "cash up front." She stated that departmental policy forbids agencies to make cash payments to birth mothers, and that the department "always views child-placing agencies giving cash, lump sum, retroactive payments [to birth mothers] as constituting undue pressure." The payments provided by Leslie Thacker to Appellant were "lump sum, retroactive" cash payments, unauthorized by either the penal code or the Texas Department of Human Services.

However, these were not the only payments made. There is evidence that, in total, Appellant received over $12,000.00 from her co-defendant, Leslie Thacker. Appellant claims that even if there is evidence that money was given to her, the evidence is still insufficient to prove that the money was for the "sale" of her children.

Although Appellant's family members were poor, they loved and cared for the children relinquished to them by Appellant. The prospective adoptive parents who took Isaac and Meriebel for "in-home" visits, all came to the conclusion that they were happy children who should not be removed from their "family." Orie Salinas and Juanita Medrano testified that Manuel, Appellant's first child, was the only child in whom she ever took an interest. Appellant had never expressed to her family any dissatisfaction with the manner in which her children were being raised. In fact, Appellant had encouraged Juanita to adopt Adamina. All that changed when Appellant met Leslie Thacker.

Juanita Medrano testified that when Appellant got out of jail on April 19th, Appellant was driven to Medrano's house by Leslie Thacker. Appellant told Juanita, "there's this crazy old lady, she brought me over here. She thinks I am going to sell my babies. She wants to buy my babies." Appellant left Juanita's house and went with Leslie Thacker to Houston. On April 27th, after the twins were born and some of the relinquishment papers had been signed, Juanita saw Appellant again. This time Appellant was being taken to the hospital for a drug overdose. In the hospital Appellant stated that she wanted to kill herself because she had nothing to live for. Juanita asked her, "Why, what *do you mean you don't* have anything. You have your kids." Juanita testified that Appellant responded, "No, I sold them to Leslie Thacker."

■ The jury, as fact finder, was the judge of each witness' credibility and the weight to be given their testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App. 1986), cert. denied, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). They were free to believe all or any part of any witness' testimony. *Id.* The jury, in this case, chose to believe the State's witnesses. Reviewing the evidence in the light most favorable to the verdict, we hold that there is sufficient evidence to sustain the conviction. Appellant's second point of error is overruled.

■ In her first point of error, Appellant contends that the trial court erred in imposing an arbitrary 45 minute time limit for voir dire. A trial court's decision to limit voir dire questioning is reviewed under an abuse of discretion standard. *McCarter v. State*, 837 S.W.2d 117 (Tex.Crim.App.1992); *Ganther v. State*, 848 S.W.2d 881 (Tex.App.— Houston [14th Dist.] 1993, pet. ref'd). Each case is to be examined on its own facts. *Ratliff v. State*, 690 S.W.2d 597, 600 (Tex. Crim.App.1985). "A reasonable time limit for one case may not be reasonable for another.... The amount of time allotted is not, by itself, conclusive." *Id.* In this case, Appellant's trial counsel used approximately

33 minutes for voir dire. At the end of this time, he affirmatively stated that he had "no further questions." In light of Appellant's trial counsel's assertion that he had no further questions, we find that the time imposed was not unreasonable and caused no harm. Appellant's first point of error is overruled.

In her fourth point of error, Appellant claims that the trial court erred in admitting irrelevant and prejudicial information. Specifically, Appellant contends that the trial court erred in admitting evidence concerning other legal proceedings, and the execution of a search warrant at Leslie Thacker's property. It is important to remember that Appellant and Leslie Thacker were tried together for the offenses of sale and purchase of a child. Juanita Medrano testified on direct examination that, at a proceeding in which Leslie Thacker was attempting to obtain custody of Isaac and Meriebel, Ms. Thacker approached Juanita and Louise and stated, "I don't know why you are fighting this. Didn't you know that poor people—never get what they want, only the rich?" Leslie Thacker's counsel objected that the statement and surrounding proceedings were "irrelevant," and "prejudicial," and Appellant's counsel joined in the objection.

■■■■■ The admissibility of evidence is within the trial court's discretion. *Duckett v. State*, 797 S.W.2d 906, 913 (Tex.Crim.App. 1990). Relevant evidence is that evidence which tends to make any fact of consequence more or less probable. Tex.R.Crim.Evid. 401; *Duckett* at 913. Such evidence may be excluded not simply if it is "prejudicial," but if its "probative value is *substantially* outweighed by the danger of *unfair* prejudice." Tex.R.Crim.Evid. 403 (emphasis added). In this case, the testimony by Juanita Medrano made the fact of the *sale and purchase* of the children more probable, because it shows that Leslie Thacker was attempting to obtain possession of the children. Although the evidence may have been *harmful* to the defense, there was nothing "unfairly prejudicial" about this evidence.

■■■■ Appellant also claims that State witness Paul Madison, a prospective adoptive parent for Isaac, discussed some outside legal proceedings. He testified, *without objec-*

tion from Appellant's counsel, that there was a custody dispute between Leslie Thacker and Louise Martinez over Isaac. Thacker's attorney then asked Mr. Madison numerous questions concerning this custody dispute, also without objection from Appellant's counsel. In order to preserve error for review, an appellant must make a timely and specific objection at the time the evidence is admitted. Tex.R.App.P. 52(a). Having failed to object to the evidence, Appellant has not preserved this issue for our review. *Cisneros v. State*, 692 S.W.2d 78, 82 (Tex.Crim. App.1985).

■■■■ Appellant further complains about the admission of evidence concerning the execution of a search warrant at Leslie Thacker's home and office, and photographs taken by the police during the search. Appellant's counsel did not object to the admission of evidence concerning the search warrant, or the evidence found as a result of the search warrant. Appellant's trial counsel only objected to the admission of the *pictures* as "irrelevant." As a general rule, the State has a right to show the facts and circumstances surrounding the offense. *Mayes v. State*, 816 S.W.2d 79, 85 (Tex.Crim.App. 1991). Such evidence is relevant "not necessarily because it influences a consequential fact, but because it illuminates a circumstance otherwise dimly perceived by the fact finder." *Id.* The exhibits Appellant objected to on "relevancy" grounds were pictures of Leslie Thacker's files and office. This evidence provided a background for the jury to better understand the facts of the case. We hold that the trial court properly overruled Appellant's relevancy objection.

In her brief, Appellant claims that she also objected that the pictures were inadmissible because they were unfairly prejudicial. We have found no such objection in the record at the time the photographs were admitted into evidence. In order to preserve error for appeal, an appellant must make a timely objection when evidence is offered. Tex. R.App.P. 52(a). Failing to do so, Appellant has not preserved that complaint for review. We hold that the trial court properly admitted the evidence regarding the custody pro-

ceedings in Galveston, the evidence of the execution of the search warrant, and the pictures of Leslie Thacker's home and office. Appellant's fourth point of error is overruled.

 In her third point of error, Appellant contends that the trial court erred in denying her requested jury instructions. In all, Appellant made four requests. Appellant's first request stated:

If you find from the evidence that Adamina DeJesus *did not* offer to accept, agree to accept or accept a thing of value . . . for the possession of any of the children . . . by Leslie Thacker for the purpose of adoption, then you will find Adamina DeJesus not guilty *without regard to whether or not the thing of value was* a fee paid to an agency as authorized by law, a fee paid to an attorney or physician for services rendered . . . or a reimbursement of legal and medical expenses received by Adamina DeJesus for the benefit of those children or for reasonable housing costs, food, clothing, utilities, personal hygiene products or transportation directly related to a need for services provided between the time that Adamina DeJesus indicated she wished to place a child, and six weeks after the delivery of said child where the agency is designated managing conservator of the child. (emphasis added).

When a refused instruction is adequately covered by the charge submitted, there is no error in refusing it. *Moody v. State,* 827 S.W.2d 875, 893 (Tex.Crim.App.1992). Further, when a defendant's requested instruction is contrary to the existing law, there is no error in not submitting it. *Stone v. State,* 703 S.W.2d 652, 655 (Tex.Crim.App.1986); *Simmons v. State,* 741 S.W.2d 595, 597 (Tex. App.—Dallas 1987, pet. ref'd).

 The beginning portion of the first requested instruction stated that Appellant was to be found not guilty if she *did not* offer to accept, agree to accept or accept a thing of value. This instruction is covered by the charge given, because Appellant could only be found guilty if she *did* offer to accept, agree to accept or accept a thing of value for the possession of her children. The latter portion of the requested instruction is a misstatement of the law. It indicates that the

jury is not to limit its consideration to the exceptions listed in § 25.11(b) of the penal code. For both of these reasons, the denial of Appellant's first requested instruction was proper.

Appellant's second requested instruction stated:

If you find from the evidence that Adamina DeJesus *did* offer to accept, agree to accept, or accept a thing of value . . . for the possession of any of the children . . . by Leslie Thacker for the purposes of adoption *and you find* that the thing of value was . . . a reimbursement . . . for reasonable housing costs, food, clothing, utilities, personal hygiene products or transportation . . . then you will find the Defendant not guilty. (emphasis added).

This instruction, just like the latter part of the first instruction, is a misstatement of the law. § 25.11 of the penal code does not list "reimbursement" for "housing costs, food, clothing, utilities, personal hygiene products or transportation" as acceptable payments. Therefore, the trial court properly refused Appellant's second requested instruction.

Appellant's third requested instruction stated:

You are further instructed that it is not necessary that Adamina DeJesus prove that the money given to her by Leslie Thacker, if any, was actually used by her for reasonable housing costs, food, utilities, clothing, personal hygiene necessaries, or transportation directly related to a need for services. All that matters is that at the time Leslie Thacker paid the money to Adamina DeJesus, that Adamina DeJesus reasonably believed that the money was for the purpose of reasonable housing costs, food, utilities, clothing, personal hygiene products, or transportation directly related to a need for services. It would not change that belief if the money was ultimately used by Adamina DeJesus for some other purpose. But if you find that at the time any such payments were made, Adamina DeJesus reasonably believed that the purpose of such payments was for reasonable housing costs, food, utilities, clothing, personal hygiene products, or trans-

portation directly related to a need for services, or you have a reasonable doubt about it, then you must find the Defendant not guilty.

The essence of this instruction, that Appellant is not guilty if she did not accept the money in exchange for her children, is covered by the charge submitted. The charge required the jury to find Appellant guilty only if they found that she "unlawfully, intentionally and knowingly" offered to accept, agreed to accept, or accepted "a thing of value, namely money" from Leslie Thacker *for the possession of her children.* Further, the instruction requested is a misstatement of the law. It is not an exception to the penal code that a birth mother can accept *money* as reimbursement for reasonable housing costs, food, utilities, clothing, personal hygiene products, or transportation. The trial court properly denied Appellant's third requested instruction.

Appellant's fourth requested instruction was a "specific intent" instruction, stating that the jury was to find Appellant "not guilty" if they were "not convinced from the evidence beyond a reasonable doubt" that at the time Appellant accepted the payments she "had the specific intent to commit the crime charged." The charge submitted included definitions of the words "intentionally" and "knowingly." It also required the jury to find that Appellant "intentionally and knowingly" offered to accept, agreed to accept, or accepted "a thing of value, namely money" from Leslie Thacker for the possession of her children. No further instruction was required. The trial court properly denied Appellant's fourth requested instruction. Appellant's third point of error is overruled.

Finally, Appellant raised a point of error "adopting all grounds of error raised by co-defendant Thacker, convicted in the same trial, raised by her brief on appeal." This Court is not required to examine a brief in another case in order to evaluate a complaint an appellant desires to advance on appeal. *Francis v. State,* 746 S.W.2d 276, 278 (Tex.App.—Houston [15th Dist.] 1988, pet. ref'd). Further, such a request does not comport with the rules of appellate procedure. *Id;* TEX.R.APP.P. 74(d). Therefore,

Appellant's request to adopt her co-defendant's points of error is rejected.

We affirm the judgment of the trial court.