**Kenneth Lamar KEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 12–01–00032–CR.

Court of Appeals of Texas, Tyler.

May 8, 2002.

Discretionary Review Refused Sept. 18, 2002.

Clifton L. Holmes, Holmes Law Office, Longview, William B. Baade, Tyler, for appellant.

Panel consisted of DAVIS, C.J., WORTHEN, J., and GRIFFITH, J.

JIM WORTHEN, Justice.

Appellant Kenneth Lamar Key ("Appellant") was convicted by a jury of interfer-

ence with public duties. The trial court assessed punishment at 180 days in the Smith County Jail, probated, and a $1,000 fine. In one issue, Appellant challenges the legal and factual sufficiency of the evidence to support his conviction. We affirm.

## BACKGROUND

Appellant was charged by information with interference with public duties by "refusing to obey lawful orders and directives of Jeffrey Callaway," a Tyler police officer ("Officer Callaway"), who "was performing a duty or exercising authority imposed or granted by law, to-wit: to preserve the peace within the officer's jurisdiction pursuant to Texas Code of Criminal Procedure Art. 2.13."[1] Appellant pleaded "not guilty," and a jury trial was conducted. Appellant appeared *pro se*, but an attorney was present at the trial and available to advise him.[2]

The State of Texas ("the State") called four Tyler police officers as witnesses. Officer Callaway, a twelve-year veteran of the Tyler Police Department, testified that on April 13, 2000, he was dispatched to a disturbance at 622 West Dobbs, Tyler, Smith County, Texas in response to a call from Appellant. Three other officers also drove to the location in separate cars. When the officers reached the location, they did not find a disturbance and were preparing to leave when Appellant arrived, driving at what Officer Callaway consid-

---

1. Article 38.15 of the Texas Penal Code defines interference with public duties as follows:
 (a) A person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with:
 (1) a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law;

 . . . .
 (b) An offense under this section is a Class B misdemeanor.
 . . . .
 TEX. PEN.CODE ANN. § 38.15(a)(1), (b) (Vernon Supp.2002).

2. Appellant is represented by counsel on appeal.

ered "an unsafe speed." Appellant came to an abrupt stop and exited his vehicle. All four officers walked toward Appellant, and Appellant walked toward the house.

Officer Callaway testified that Appellant began to yell at a male and female, later identified as a Mr. Lee ("Mr. Lee") and a Ms. Toliver ("Ms. Toliver"), who were outside the house[3] and that Officer James Meredith ("Officer Meredith") asked Appellant how they could help him. Appellant then yelled at Officer Meredith and told him he needed to do his job. As Officers Callaway and Meredith moved closer, Appellant yelled at Mr. Lee and Ms. Toliver that they needed to get the dog "out of here," which was a reference to a dog chained in the yard. He then told the officers they needed to get Mr. Lee off the property. According to Officer Callaway, Appellant seemed agitated and angry and his voice was elevated. Both officers attempted to calm Appellant in an effort to investigate the reason for the disturbance call, but Appellant continued his aggressive tone and was "belligerent" with "a very elevated volume in his voice."

Officer Callaway stated that when Appellant first arrived, he was merely talking loudly, but then Appellant began to "advance on him at a pretty good rate of speed for a walk." As Appellant approached him, Officer Callaway put up his hand, and Appellant walked into it with his chest. At that point, Appellant yelled "something to the effect of 'You can't touch me,'" and Officer Callaway told Appellant to get back on the sidewalk. Officer Callaway concluded that Appellant was trying to get to Mr. Lee and believed his instruction was necessary to prevent Appellant from assaulting Mr. Lee and to preserve the safety of the officers.

Officer Callaway continued his attempts to calm Appellant, but Appellant's agitation did not subside, and he moved off the sidewalk and headed toward Mr. Lee. When Officer Callaway stepped toward him, Appellant quickly moved back onto the sidewalk. Appellant continued yelling and moved off the sidewalk five additional times in an attempt to reach Mr. Lee, despite Officer Callaway's attempts to calm him and his instructions that Appellant remain on the sidewalk. After the sixth time Appellant stepped off the sidewalk in violation of Officer Callaway's instructions, Officer Callaway and Officer Darrell Gardner ("Officer Gardner") handcuffed Appellant and placed him under arrest.

Officer William A. Horton ("Officer Horton"), a nineteen-year officer with the Tyler Police Department, was also dispatched to the Dobbs address and confirmed Officer Callaway's description of the incident. Officer Horton testified that he attempted to speak to Appellant, who appeared angry and belligerent, but Appellant refused to answer questions. He also stated that Appellant would "come real close and get right up in my face and I would have to back off from him because I feared for my safety." In Officer Horton's opinion, Appellant was acting in a threatening manner and was trying to get by the officers to reach Mr. Lee and Ms. Toliver. He considered Appellant's behavior sufficient reason to believe that Appellant could create a problem with either an assault or a possible assault. Although Officer Horton went into the house to speak with Mr. Lee and Ms. Toliver, he was looking outside when Appellant walked into Officer Callaway's arm. He could also hear Appellant and

---

**3.** The female was later determined to be Appellant's tenant, and Mr. Lee was her boyfriend.

recalled that he was still very belligerent and loud and was "flailing his arms around." He did not see any of the other instances described by Officer Callaway in which Appellant moved off the sidewalk and moved toward Mr. Lee.

Officer Gardner, who had been with the Tyler Police Department four years, was also dispatched in response to Appellant's disturbance call and gave a similar account of the incident. He stated that the officers did not initially arrest Appellant because they were trying to give him the opportunity to calm down, which would have allowed them to find out why they were called and possibly work out the problem without a disturbance. Officer Gardner was outside with Officer Callaway and Appellant during the entire incident and stated that each time Appellant moved off the sidewalk, he was also pointing at Mr. Lee and yelling at him. After Appellant moved off the sidewalk for at least the sixth time, Officers Gardner and Callaway knew they were going to have to stop him, and they placed him under arrest.

Officer Meredith, who was the fourth officer present during the incident, had been with the Tyler Police Department for twenty-two years. He described Appellant as "doing a lot of yelling and flailing" and observed that Appellant would not answer any questions and continued to yell. He stated that they finally learned Appellant owned the residence as rental property and that the problem had to do with the house. Officer Meredith accompanied Officer Horton when he went in to discuss the incident with Mr. Lee and Ms. Toliver. When he came back outside, Appellant had been arrested and was sitting in the back of the patrol car. While he was in the house, he could not see what occurred between Appellant and the officers who remained outside.

Appellant did not testify, but called six witnesses in his defense. Four of those witnesses were the officers who testified for the State, and their testimony regarding the details of the incident did not vary from the testimony they gave on direct examination by the State. Clifton Roberson, a Tyler attorney, testified about events that occurred subsequent to the incident in question. Timothy Carr Hamlin ("Hamlin"), who was a friend of Mr. Lee, testified that he was at the scene of the incident and was standing outside talking to Mr. Lee when the police arrived. He stated that he did not feel threatened by Appellant and did not see any of the events described by the officers. He recalled that Appellant was upset and acted "kind of excited," but he did not remember hearing Appellant say he wanted to beat up Mr. Lee or seeing him try to do so.

The jury found Appellant guilty, and the trial court assessed punishment at 180 days in the Smith County Jail, probated, and a $1,000 fine. Appellant gave timely notice of appeal.

### SUFFICIENCY OF THE EVIDENCE

In his sole issue, Appellant contends that the evidence presented by the State is both legally and factually insufficient to support the jury's verdict. Specifically, Appellant contends that his conduct during the incident in question consisted of speech only, which is a defense to prosecution under section 38.15.[4]

---

4. "It is a defense to prosecution under this section that the interruption, disruption, impediment, or interference alleged consisted of speech only." TEX. PEN.CODE ANN. § 38.15(d) (Vernon Supp.2002). The statutory language creating the defense was included in the jury charge.

### Legal Sufficiency

 Where a party seeks reversal of a conviction on grounds of both legal and factual insufficiency, an appellate court must first determine whether the evidence adduced at trial was legally sufficient to support the verdict. *See Clewis v. State,* 922 S.W.2d 126, 133 (Tex.Crim.App.1996). Our determination of sufficiency of the evidence requires that we review all evidence, both admissible and inadmissible. *Gardner v. State,* 699 S.W.2d 831, 835 (Tex.Crim.App.1985). The standard of review that a court must follow in making a determination of legal sufficiency requires that it ask whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). While conducting this review, a court does not reevaluate the weight and credibility of the evidence, but merely ensures that the jury reached a rational decision. *Muniz v. State,* 851 S.W.2d 238, 246 (Tex.Crim.App. 1993).

In the case at hand, Appellant was charged with interference with public duties for "refusing to obey lawful orders and directives of Jeffrey Callaway," a Tyler police officer who "was performing a duty or exercising authority imposed or granted by law, to-wit: to preserve the peace within the officer's jurisdiction pursuant to Texas Code of Criminal Procedure Art. 2.13." Officer Callaway testified that Appellant, upon his arrival at the scene, immediately began yelling at Mr. Lee and Ms. Toliver, who were outside the house. He also testified that Appellant seemed agitated and angry and his voice was elevated. He further stated that he and Officer Meredith attempted to calm Appellant in an effort to investigate the reason for the disturbance call.

After noting Appellant's apparent anger at Mr. Lee, Officer Callaway instructed Appellant to stay on the sidewalk, which he believed was necessary to prevent Appellant from assaulting Mr. Lee and to preserve the safety of the officers. After Officer Callaway told Appellant to stay on the sidewalk, Appellant stepped off the sidewalk and headed in Mr. Lee's direction six times. Each time, Officer Callaway stopped Appellant and directed him to get back on the sidewalk. Officer Gardner confirmed Officer Callaway's testimony that Appellant continued to step off the sidewalk and move toward Mr. Lee despite Officer Callaway's instructions. Thus, based on our review of the record, we conclude Appellant engaged in conduct other than speech in refusing to obey the directives of Officer Callaway. Consequently, we hold that the evidence is legally sufficient to support Appellant's conviction of interference with public duties.

### Factual Sufficiency

 After a court of appeals has determined that the evidence is legally sufficient to support the verdict, it must proceed to review all the evidence in a claim of factual insufficiency. *Clewis,* 922 S.W.2d at 133. In conducting a factual sufficiency review, the appellate court must view all of the evidence impartially and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 135; *Bigby v. State,* 892 S.W.2d 864, 875 (Tex.Crim.App.1994). However, this court must not substitute its judgment for that of the jury. It is not the role of an appellate court to interfere with the jury in resolving conflicts in the evidence or determining the weight and credibility to be accorded varying witnesses' testimony. *Van Zandt v. State,*

932 S.W.2d 88, 96 (Tex.App.-El Paso 1996, pet. ref'd).

In the instant case, Officer Meredith testified on direct examination by the State that he was in the house with Officer Horton and did not see what occurred between Appellant and the officers who remained outside. Appellant did not testify, but called six witnesses for his defense. Four of the witnesses were the officers who were present during the incident in question. Officer Horton testified that he did not see the instances in which Appellant stepped off the sidewalk in violation of Officer Callaway's instructions because he was in the house.

Hamlin testified that he was at the scene of the incident and was outside talking to Mr. Lee. He stated that he did not feel threatened by Appellant. He further stated that he did not hear any of Appellant's conversations with the officers or see any of the events the officers described in their testimony, but he recalled that Appellant was upset and acted "kind of excited." Hamlin also did not remember hearing Appellant say he wanted to beat up Mr. Lee or seeing him try to do so.

Our review of the testimony of all the evidence indicates that Hamlin's is the only testimony that can be considered to contradict the testimony presented by the State. Even considering Hamlin's testimony, however, we are mindful that our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony, *Santellan*, 939 S.W.2d at 164, and note that where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *VanZandt*, 932 S.W.2d at 96. Our review of the record as a whole does not cause us to conclude the jury's verdict is so contrary to the great weight of the evidence presented at trial as to be clearly wrong and

unjust. Therefore, we hold that the evidence is factually sufficient to support Appellant's conviction of interference with public duties. Appellant's sole issue is overruled.

The judgment of the trial court is *affirmed*.