Scott Edward **BERRETT**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–02–01210–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

May 13, 2004.

Rehearing Overruled Aug. 27, 2004.

Discretionary Review Refused
Jan. 19, 2005.

Lee D. Cox, Richmond, for appellant.

Scott Edward Berrett, East Bernard, pro se.

David C. Newell, John H. Harrity, III, Assistant District Attorneys—Fort Bend County, John Healey, District Attorney—Fort Bend County, Richmond, for appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

SHERRY RADACK, Chief Justice.

A jury convicted appellant, Scott Edward Berrett, of interference with public duties, and the trial court, in accordance with a plea agreement as to punishment, sentenced appellant to 180 days' confinement, probated for one year. We affirm.

## BACKGROUND

On August 15, 2001, Officer Matthew Meek of the Rosenberg Police Department stopped appellant because appellant was not wearing his seatbelt. Meek and appellant pulled into the parking lot of Kwik Kar Lube. Meek got out of his patrol car, and appellant, without being requested to do so, got out of his vehicle and approached Meek. Appellant told Meek that he had been stopped earlier that day for an expired inspection sticker.

Meek asked to see appellant's driver's license and proof of insurance. Appellant gave Meek his proof of insurance and a driver's license with the name "Elvis Presley" on it. Eventually, appellant gave Meek his correct driver's license.

Meek told appellant that he was going to give him a citation for failure to wear a seatbelt. Appellant became hostile and said that the citation was a "chicken-shit charge." Meek realized that appellant's hostile response "increased the situation, [made him] step up a notch where [he] was more aware, realizing [appellant] was becoming hostile, and it could become more potential [sic] hazardous situation."

Appellant began to pace back and forth. Meek told appellant to stop pacing. Appellant replied that Meek's order to stop pacing violated his constitutional rights. Meek then called for back-up.

Appellant walked back toward his car; Meek told him not to return to the car, but appellant continued anyway. Meek and an onlooker both testified that they were afraid that appellant was going to the car to get a gun. Instead, appellant, a reporter, retrieved a video camera from his car. Appellant began exclaiming to onlookers at the Kwik Lube that Meek was abusing him and treating him unjustly. Meek then called and requested that his supervisor come to the location.

Meek tried to approach appellant's car to look at the vehicle registration and inspection stickers. Appellant moved toward Meek in an aggressive manner. Meek, fearing for his safety, pushed appellant in the chest. Appellant became more irate and hostile, but did not stumble back at all. He yelled that Meek had assaulted him. Meek testified that he was scared and did not attempt to arrest appellant because he believed that he would need to use force to handcuff appellant. Instead, Meek returned to his car to finish writing the citation.

Officer Meek again approached appellant with the citation and asked appellant

for his telephone number, his address of employment, and his social security number. Appellant refused to provide the information, claiming that he did not have to give it and that it was none of Meek's business. Meek twice asked appellant to sign the citation. He tried to explain that all he wanted appellant to do was sign the citation. Appellant refused. Meek testified that, had appellant signed the citation, he would have been released. Because appellant refused to sign the citation, Meek decided to arrest appellant.

Meek told appellant to put his hands on the car. Appellant refused and continued videotaping the incident. Meek grabbed appellant's left arm, while appellant continued to hold the camera in his right hand. Meek placed appellant's torso on the car while he attempted to gain control of appellant's right arm. Appellant continued to move his right arm in an attempt to continue filming. Meek made at least 15 requests for appellant to place his right arm behind his back. Appellant refused and continued attempting to film. In an attempt to subdue appellant, Meek sprayed him with OC spray. Appellant continued to hold the camera.

Finally, Officers Pausewang and Stephen arrived to assist Meek in subduing appellant. Pausewang removed the camera from appellant's right hand and took control of appellant's right arm. The three officers took appellant to the ground and gained control of him. Both Meek and Pausewang testified that this was appropriate police protocol. During the process, appellant scraped his knees. EMS arrived at the scene and decontaminated appellant's eyes from the use of the OC spray. Appellant was transported to jail and was arrested for, among other things, the seatbelt violation.

## COMMENT ON APPELLANT'S FAILURE TO TESTIFY

■ In point of error one, appellant contends that the prosecutor unconstitutionally commented on appellant's failure to testify in his own defense. During appellant's closing statement, the following exchange took place:

[Appellant]: I—I couldn't believe what was going on. At that point he was a mugger. I'm not going to sign anything from a mugger, somebody who has assaulted me, not once, not twice, but three times; and the third time—you've seen the pictures. You've seen what I've gone through. That's in evidence.

[Prosecutor]: Your Honor, my objection is that the defendant waived his right to testify. This is not a proper time for him to testify.

[The court]: Overrule—

[Appellant]: I'm just reviewing the evidence for the jury. I'm sorry?

[The court]: Overrule the objection. You may proceed.

[Appellant]: Thank you.

Appellant did not object at trial to the prosecutor's statement. As such, nothing is preserved for our review. *See Johnson v. State*, 629 S.W.2d 953, 954 (Tex.Crim. App.1982) (holding that failure to object to prosecutor's comment on defendant's failure to testify preserved nothing for appellate review).

We overrule point of error one.

## LEGAL AND FACTUAL SUFFICIENCY

Appellant was charged with violating section 38.15 of the Texas Penal Code, which provides:

(a) A person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with:

(1) a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law;

. . .

(d) It is a defense to prosecution under this section that the interruption, disruption, impediment, or interference alleged consisted of speech only.

TEX. PEN.CODE ANN. § 38.15(a)(1),(d) (Vernon 2002).

 Appellant contends that the evidence is legally and factually insufficient to show that he violated the above-referenced statute. In evaluating the legal sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim.App.2000). Although our analysis considers all evidence presented at trial, we may not re-weigh the evidence and substitute our judgment for that of the jury. *Johnson v. State*, 967 S.W.2d 410, 412 (Tex.Crim.App.1998); *Wilson v. State*, 863 S.W.2d 59, 65 (Tex.Crim.App.1993). Under the factual sufficiency standard, we ask "whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *King v. State*, 29 S.W.3d 556, 563 (Tex. Crim.App.2000)

Appellant contends that his refusal to place his right hand behind his back was not a voluntary act, but was, instead, an omission to act for which he could not be held criminally liable absent a showing that he had a duty to comply.[1] He also seems to argue that his actions were "mere speech," which is a defense to the charge. We disagree.

 Appellant voluntarily kept filming and moving his arm out of Meek's reach in an effort to prevent Meet from placing him in handcuffs. On more than 15 occasions, Meek told appellant to put his right arm behind his back, but each time, appellant moved his arm out of Meek's reach and continued to film the encounter in a manner that precluded his arrest. We conclude that such conduct, in these circumstances, constituted voluntary action, not a mere omission to act. As a result, the State did not have to prove that appellant had a duty to submit to the arrest. Furthermore, appellant's actions in repeatedly pulling away from the officer and filming the encounter in such a way as to interfere with the arrest were more than "mere speech."

In *Key v. State*, 88 S.W.3d 672, 676–77 (Tex.App.-Tyler 2002, pet. ref'd), the defendant, similarly, was charged with interference with public duties. *Id.* In that case, the investigating officers told Key six times to remain on the sidewalk while they talked to others at the scene. *Id.* On each occasion, Key stepped off the sidewalk and approached the two people the police were questioning. *Id.* The court of appeals held that this behavior was more than mere speech and was legally and factually sufficient to support a conviction for interfering with the public duties of the officers. *Id.*

We hold that appellant's actions in interfering with Meek's attempts to arrest him

---

1. *See* TEX. PEN.CODE ANN. § 6.01 (Vernon 2002) (stating that a person who *omits* to perform an act does not commit an offense unless the law provides that the omission is an offense or otherwise provides that he has a duty to perform the act).

were legally and factually sufficient to show that appellant interfered with Meek's public duties.

Appellant also argues that Meek was not under a duty to arrest him, and that Meek could have, instead, allowed him to leave the scene even though appellant refused to sign the citation. Appellant's argument is without merit.

■ A person interferes with public duties "if the person ... interferes with a peace officer while the peace officer is performing a duty *or exercising authority imposed or granted by law.*" TEX. PEN. CODE ANN. § 38.15(a)(1). Even if Meek was not obligated to take appellant into custody, he was acting within his discretionary authority to do so when he arrested appellant for not wearing a seatbelt. It is a violation of the Transportation Code to drive while not wearing a seatbelt. TEX. TRANSP. CODE ANN. § 545.413 (Vernon 1999). The Transportation Code further provides that "any peace officer *may* arrest without warrant a person found committing a violation of this subtitle." TEX. TRANSP. CODE ANN. § 543.001 (Vernon 1999); *see also Atwater v. City of Lago Vista,* 532 U.S. 318, 121 S.Ct. 1536, 1557, 149 L.Ed.2d 549 (2001) (holding that Fourth Amendment not violated when officer makes custodial arrest for driving without a seatbelt). It is uncontested that appellant was not wearing his seatbelt when Meek pulled him over. The evidence is legally and factually sufficient to show that Officer Meek exercised authority the law grants to him when he placed appellant under arrest for failing to wear his seatbelt.

2. Appellant also appears to argue that he should have been charged with resisting arrest, rather than interference with public duties. However, he never filed a motion to quash, thus, this argument is waived. *See*

■ Accordingly, we overrule point of error two.[2]

## JURY INSTRUCTION

In point of error three, appellant contends that the trial court erred by refusing to instruct the jury on whether he could have been released, rather than arrested, for a Class C misdemeanor. During the State's questioning of Meek, the following exchange took place:

[Prosecutor]: So if [appellant] would have just agreed to sign the ticket, he would have been on his merry way; is that correct?

[Meek]: Yes, ma'am.

[Prosecutor]: Is there any way to secure court attendance, any other way other than taking that person into custody—

[Meek]: No, ma'am.

[Prosecutor]:—when they won't sign the ticket?

[Meek]: No, ma'am.

Later, outside the presence of the jury, the trial court remarked, "I am not comfortable even where the officer is saying to the jury that the only way they can get him in the court is either if you sign the ticket or arrest him, because that's just not—I just know it's not true." The trial court then, *sua sponte,* instructed the jury as follows:

Texas law provides that to secure release a person arrested must make a written promise to appear in court by signing the written notice to appear by the arresting officer. The officer shall then promptly release the person from custody.

*Short v. State,* 995 S.W.2d 948, 953 (Tex.App.-Fort Worth 1999, pet. ref'd) ("By failing to timely object to the substance of the indictment under the doctrine of in pari materia, appellant waived her complaint on appeal.").

Texas law further provides that a peace officer who is charging a person with committing an offense that is a Class "C" misdemeanor may, instead of taking the defendant before a magistrate, issue a citation to the person that contains written notice at the time and place the defendant must appear before a magistrate, the name and address of the person charged, and the offense charged. *Texas law further provides that a defendant may be released without signing a written promise to appear.* When a defendant is so released by the arresting officer and fails to appear before a magistrate at the time and place stated in the citation, the magistrate may cause to issue a summons commanding the defendant to appear in court at a time and place stated in the summons; or the magistrate may cause to issue a capias that commands any peace officer of this state to arrest the defendant to bring him before the Court immediately or on a day or at a term stated in the capias.

(Emphasis added).

At the charge conference, appellant requested that the above-referenced instruction, which the trial court gave verbally, be included in the charge. The trial court refused. Appellant contends that, by failing to also include the instruction in the charge, the trial court reversibly erred. We disagree.

■ When an appellant's requested charge is not a correct statement of the law, the trial court does not err in refusing to submit the charge. *See DeJesus v. State,* 889 S.W.2d 373, 379 (Tex.App.-Houston [14th Dist.] 1994, no pet.); *Showery v. State,* 678 S.W.2d 103, 109 (Tex. App.-El Paso 1984, pet. ref'd). In this case, the requested instruction is not a correct statement of the law.

---

3. Failure to wear a seatbelt is a Class C misdemeanor. *See* TEX. TRANSP. CODE ANN.

The Texas Code of Criminal Procedure provides:

A peace officer who is charging a person, including a child, with committing an offense that is a Class C misdemeanor, other than an offense under Section 49.02, Penal Code, may, instead of taking the person before a magistrate, issue a citation to the person that contains written notice of the time and place the person must appear before a magistrate, the name and address of the person charged, and the offense charged.

TEX.CODE CRIM. PROC. ANN. art. 14.06(b) (Vernon Supp.2004).

Similarly, the Texas Transportation Code provides:

An officer who arrests a person for a violation of this subtitle punishable as a misdemeanor and who does not take the person before a magistrate shall issue in duplicate a written notice to appear in court showing the time and place the person is to appear, the offense charged, the name and address of the person charged, and, if applicable, the license number of the person's vehicle.

TEX. TRANSP. CODE ANN. § 543.003 (Vernon 1999).

■ Under both of these statutes, a peace officer, in lieu of a custodial arrest (which requires promptly taking the arrestee before a magistrate), may issue a citation or notice to appear before a magistrate to a defendant who commits a Class C misdemeanor.[3] The Code of Criminal Procedure is silent as to whether a citation requires an alleged offender's promise to appear. The Transportation Code, however, has an additional section, which further provides:

To secure release [after receiving a written notice to appear or citation], the

§ 545.413(d); TEX. PEN.CODE ANN. § 12.23 (Vernon 2003).

person arrested must make a written promise to appear in court by signing in duplicate the written notice prepared by the arresting officer. The arresting officer shall retain the original of the notice and deliver the copy of the notice to the person arrested. The officer shall then promptly release the person from custody.

TEX. TRANSP. CODE ANN. § 543.005 (Vernon 1999).

The trial court apparently believed that the above-referenced provisions were in conflict because the Code of Criminal Procedure does not contain a requirement that a defendant sign a written promise to appear before being released after receiving a citation, while the Transportation Code does. We perceive no such conflict.

The Code Construction Act mandates that we should attempt to harmonize any apparent conflict between two provisions so that both provisions are given effect. *See* TEX. GOV'T CODE ANN. § 311.026(a) (Vernon 1998); *see also Cheney v. State,* 755 S.W.2d 123, 126 (Tex.Crim.App.1988) ("effect will be given to all the provisions of each act if they can be made to stand together and have concurrent efficacy").

We believe that the statutes can be harmonized so as to give effect to all. Under both 14.06(b) of the Code of Criminal Procedure and 543.003 of the Transportation Code, a peace officer may issue a notice to appear before a magistrate to a defendant charged with a Class C misdemeanor, rather than taking the arrestee promptly before a magistrate. Article 543.005 of the Transportation Code does not conflict with these provisions; rather it provides an additional requirement in the context of arrests made pursuant to a violation of the Transportation Code. Specifically, before an officer may issue a citation and release a defendant charged with violating the Transportation Code, the defendant *must* also sign a promise to appear before a magistrate. Only then does the officer have a duty to release the defendant from custody. If the defendant does not promise to appear, the officer is under no duty to release him. Instead, the officer could choose to take the defendant immediately before a magistrate. *See* TEX. TRANSP. CODE ANN. § 543.002 (Vernon 1999). To secure a release for a violation of the Transportation Code, the defendant *must* sign a promise to appear. *See* TEX. TRANSP. CODE ANN. § 543.005. Once he does so, "the officer shall then promptly release the person from custody." *Id.*

Appellant, in this case, was charged with a Class C misdemeanor—failing to wear a seatbelt—pursuant to section 545.413 of the Transportation Code. Therefore, the proposed charge, which stated that appellant was not required to sign a promise to appear in order to obtain his release after receiving such a citation, was an incorrect statement of the law. As such, the trial court did not err by refusing to place the requested instruction in the charge.

We overrule point of error three.

We affirm the judgment.