Carolyn Machalec BARNES, Appellant,

v.

The STATE of Texas.

No. PD–0939–05.

Court of Criminal Appeals of Texas.

April 26, 2006.

Carolyn Machalec Barnes, Round Rock, pro se.

Lisa McMinn, Asst. State's Atty., Matthew Paul, State's Atty., Austin, for State.

KELLER, P.J., delivered the opinion of the Court in which PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, HOLCOMB and COCHRAN, JJ., joined.

Today we address whether various acts committed during a traffic stop are sufficient to show interference with a peace officer's public duties. We find that they are, and reverse the judgment of the Court of Appeals.

## I. BACKGROUND

### A. Facts

On March 6, 2002, Department of Public Safety Trooper Mark Koenig stopped appellant's pickup truck for traveling 65 m.p.h. in a 55 m.p.h. zone. The truck was occupied by appellant and her seven-year-old son. Koenig parked his patrol car behind the truck, and because the highway was a high-speed zone, approached appellant's vehicle on the passenger side. He opened the passenger door to speak to appellant. He testified that he opened the door because of the noise of the truck's diesel engine and because it appeared that the driver had signaled for him to open the door because she could not reach it. However, opening the door angered appellant, who began to berate the officer about the stop and his conduct.[1] Koenig closed the truck's door and continued to speak to appellant through the open passenger window. He told appellant he was going to write her a citation and told her to stay where she was. He then returned to his patrol car to verify appellant's identity and to run a check of her criminal history and driving record.

---

1. It was later determined that appellant was an attorney. She subsequently represented herself at trial.

As Koenig sat in his patrol car, appellant's truck began to move slowly forward. (At some point, appellant had also rolled up her windows.) Koenig interrupted his conversation with the dispatcher and exited his vehicle to approach the truck. He repeatedly warned appellant to stop and to put the vehicle's gearshift into park, but the truck continued to move slowly some distance before coming to a complete halt. Koenig estimated that the total distance traveled was 70 feet. After appellant's initial refusal to stop, Koenig added to his two previous commands a command to exit the vehicle. But while appellant belatedly complied with the command to stop, she ignored his other commands, refusing to put the gearshift into park and refusing to leave the truck. Koenig then moved his patrol car forward to bring it closer to the truck and called for assistance. Deputy Ralph Fisher came to his aid, pulling his vehicle in front of appellant's truck to prevent forward movement. Koenig then moved his car directly behind appellant's truck to box her in.

Koenig approached appellant's vehicle again and repeated requests for her cooperation. Several times he asked her to roll down her windows or to get out of the truck, but she ignored these requests. More than once, he also told her, "Don't make this difficult. This is a speeding ticket." Later, Koenig asked if appellant would at least crack the window so that they could more easily engage in conversation, as he was having difficulty hearing her through the closed window. At some point, appellant began reading a book.

About ten minutes into the incident, appellant began searching in her purse and under her seat. Koenig, fearing that appellant was reaching for a weapon, drew his service weapon, pointed it at appellant, and ordered her to show her hands. From time to time, appellant would withdraw her hands from view to reach for something, prompting Koenig to repeatedly request that appellant keep her hands in view.

Approximately forty minutes after the stop, and after consulting by phone with a superior officer, Koenig advised appellant that she was under arrest for evading arrest and refusing to accept the speeding citation. He requested that she peacefully step out of the vehicle and explained that if she did not, he would have to break the window and forcibly remove her. He then said, "Please do not force us to do that." He also told her that, if she was forcibly removed from the vehicle, her child would be placed in the custody of Child Protective Services. When she did not respond, he repeated pleas for her to put the vehicle into park and to step out. After appellant ignored these latest pleas, Koenig broke a window in appellant's truck and opened the doors. Koenig restrained appellant while Fisher attempted to restrain appellant's son. Appellant shouted for the boy to run and shouted, apparently to anyone passing by or looking on, "They will kill him." The boy first turned as if to run onto the highway and then ran to a nearby gas station where he was stopped by a civilian.

The entire incident was videotaped by a camera in Koenig's patrol car. The tape, with some edits made in response to appellant's objections, was shown to the jury. We have viewed the edited version of the tape.

As a result of this incident, appellant was charged with the offense of "Interference With Public Duties," a Class B misdemeanor.[2] The information under which appellant was tried charged that she did

---

2. *See* TEX. PEN.CODE § 38.15.

... with criminal negligence interrupt, disrupt, impede, and otherwise interfere with the said M. Koenig by driving her vehicle forward while the said defendant was lawfully detained; and by directing her minor child to leave her vehicle and run in an area near traffic; and by continuously refusing to obey orders regarding officer safety, while M. Koenig, a peace officer, was performing a duty or exercising authority imposed or granted by law, to wit: to preserve the peace within the officer's jurisdiction.

Appellant was convicted and sentenced to thirty days in jail and a $1000 fine, but imposition of sentence was suspended, and she was placed on probation.

### B. Court of Appeals

Appellant contended on appeal that the evidence was legally insufficient to support her conviction. The Court of Appeals agreed, reversing the conviction and rendering a judgment of acquittal.[3] In support of its holding, the Court of Appeals first articulated a general rationale that applied to the offense as a whole and then articulated specific responses aimed at the State's theories of liability. The appellate court's position, generally speaking, was that lack of cooperation is already penalized under the Transportation Code:

> Appellant's prosecution rests on her lack of cooperation with Officer Koenig as he attempted to cite her for speeding. Although traffic law violations ordinarily result only in a written citation, a violator is subject to warrantless custodial arrest if she refuses to make a written promise to appear.

* * *

Thus, under the transportation code, the consequence for a driver who refuses to accept citation is immediate custodial arrest for the traffic offense. We do not believe that a traffic law violator who directly or indirectly refuses citation may also be prosecuted under section 38.15 on the theory that the refusal disrupts, impedes, or otherwise interferes with the officer's performance of his official duties. The transportation code authority to arrest for a traffic offense would be unnecessary if an officer could arrest a traffic offender for violating section 38.15 under these circumstances.[4]

With regard to the charge that appellant moved her vehicle, the Court of Appeals stated that appellant "had already been detained when she moved her truck forward, and that status was not affected by this conduct."[5] The appellate court further held that the conduct did not interfere with appellant's arrest because the officer was not attempting to arrest her at the time she moved forward.[6]

The Court of Appeals further observed that the "disobeying safety orders" charge was based solely upon appellant's conduct of rummaging through her purse and under her seat after being told repeatedly to keep her hands in view.[7] As with the vehicle-movement allegation, the court held that this conduct did not interfere with the detention because appellant was already detained, and that status did not change.[8] Finally, the Court of Appeals held that appellant's shout to her child to

---

**3.** *Barnes v. State,* 166 S.W.3d 416 (Tex.App.-Austin 2005).

**4.** *Id.* at 419–420.

**5.** *Id.* at 420.

**6.** *Id.*

**7.** *Id.*

**8.** *Id.*

run constituted "speech only," a statutory defense to prosecution.[9]

## II. ANALYSIS

Section 38.15 provides in relevant part that a person commits an offense if the person:

> with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law.[10]

It is a defense to prosecution if: "the interruption, disruption, impediment, or interference alleged consisted of speech only." [11]

The Court of Appeals correctly points out that the Transportation Code authorizes arrest for the offense of speeding if the violator refuses to make a written promise to appear in court.[12] But appellant did not simply refuse to sign a citation. In fact, Officer Koenig never presented her with a citation. Each of the three acts she was charged with—moving her vehicle forward, disregarding officer safety commands by removing her hands from view, and shouting to her child to "run"—consists of more than simply refusing to make a written promise to appear, and it is for those acts that she was prosecuted.

We must also disagree with the appellate court's analysis regarding appellant's moving her truck forward and disobeying safety commands. The court of appeals said that since appellant had already been detained, these acts did not interfere with her detention. But the charging instrument did not allege merely that appellant interfered with the detention. The information alleged that the acts interfered with the officer's duty to preserve peace within his jurisdiction. So, whether or not appellant's acts interfered with the detention, her acts interfered with his duties during the more-than-forty-minute encounter. Her act of moving forward forced Koenig to interrupt his conversation with the dispatcher and disrupted his plan to present a speeding citation. Her refusal to stop when first ordered to do so also forced Koenig to call another officer to assist him—further impeding his attempt to efficiently and speedily serve her with a citation. Her failure to keep her hands in the open also served to distract Koenig's attention, thereby prolonging the stop.

Moreover, the Court of Appeals is mistaken in saying that these acts did not interfere with the detention itself. Movement of the vehicle in the face of the officer's command to desist was itself an act inconsistent with the officer's exercise of authority to detain her. And in fact, this movement raised the possibility of flight—requiring Koenig to take additional measures to ensure that detention would not be successfully evaded. Failing to keep her hands in the open after being instructed to do so was also an act in defiance of the detention itself, which reasonably includes ensuring the safety of the officer performing the detention.

Finally, we disagree with the court's conclusion that appellant's shout to her son to "run" was "speech only." Appellant's

9.  *Id.;*  *see*  § 38.15(d)("speech only" defense).

10.  § 38.15(a)(1).

11.  § 38.15(d).

12.  Tex. Transp. Code §§ 543.001 (arrest authorized for violations of provisions of this subtitle), 543.004 (officer must issue written notice to appear for speeding offense if violator makes a written promise to appear in court under 543.005), 543.005 (to secure release, violator "must make a written promise to appear in court by signing the written notice prepared by the arresting officer").

shout to her seven-year-old son was a command to act. In the First Amendment context, from which the "speech only" defense was apparently derived, words that are specifically designed to prompt an associate to action are not simply speech, but are conduct that may be treated accordingly.[13]

The Court of Appeals erred in holding the evidence to be insufficient to support the conviction.[14] The judgment of the Court of Appeals is reversed, and the case is remanded to that court to address appellant's remaining points of error.

MEYERS, J., filed a dissenting opinion.

MEYERS, J., dissenting.

The court of appeals probably did an incorrect sufficiency analysis. The court should have used *Malik v. State,* 953 S.W.2d 234 (Tex.Crim.App.1997) and considered the sufficiency of the evidence measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Id.* at 240. However, the State's petition for discretionary review asks only:

(1) Must a defendant who is stopped for speeding be prosecuted only for speeding where her actions during detention constitute both refusal of citation and interfering with a peace officer under section 38.15 of the Texas Penal Code?

(2) Is speech which causes another person to act included within the "speech only" exception to section 38.15?

(3) May a defendant be prosecuted under section 38.15 for actions that occur *during* detention, as well as for actions that occur when she is first detained or when she is later arrested?

The State doesn't say that the court of appeals did an incorrect sufficiency analysis.

Even though the court of appeals did not use the correct analysis in this published opinion and the State brought the wrong grounds for review, since this is an extremely fact-bound case involving a state statute, the improper analysis does not affect our jurisprudence and we should dismiss this case as improvidently granted. Therefore, I respectfully dissent.

**13.** *Schenck v. United States,* 249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470 (1919)(First Amendment does "not protect a man from an injunction against uttering words that may have all the effect of force," citing *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 439, 31 S.Ct. 492, 55 L.Ed. 797 (1911)); *Gompers* ("agreement to act in concert when the signal is published ... gives the words ... a force not inhering in the words themselves.... Under such circumstances they become what have been called 'verbal acts,' and as much subject to injunction as the use of any other force"); *Pedersen v. City of Richmond,* 219 Va. 1061, 1066, 254 S.E.2d 95, 98–99 (1979)("Laws prohibiting solicitation are not directed against words but against acts. A solicitation is, in itself, an act. It is an incite-ment to unlawful activity which goes beyond the permissible limits of the right of free expression. The social purposes underlying the First Amendment do not extend the protection of that amendment to verbal acts soliciting crimes."); *Cherry v. State,* 18 Md.App. 252, 260–264, 306 A.2d 634, 639–641 (1973)(even the most fervent champions of free speech recognized that the First Amendment did not extend to verbal acts soliciting criminal conduct). *See also* TEX. PEN.CODE § 7.02 (criminal responsibility for conduct of another).

**14.** While we have addressed all three of the State's theories of liability, we note that each theory independently supports the conviction.