Opinion issued November 16, 2006 
















Opinion
issued November 16, 2006








            

 

 

 

 














 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-05-00948-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



DANIELLE MARIE DICKERSON, Appellant

 

V.

 

THE STATE OF TEXAS,
Appellee

 

 



On Appeal from County Criminal Court at Law
No. 15

Harris County, Texas

Trial Court Cause No. 1299509

 








 



MEMORANDUM OPINION

A jury found appellant Danielle Marie
Dickerson guilty of the Class B misdemeanor offense of interference with public
duties.  See Tex. Pen. Code Ann. § 38.15(a)(1) (Vernon Supp. 2005). 
The trial court assessed punishment at fifteen days’ confinement and
imposed a fine of $500.  In two
issues, Dickerson contends the evidence is legally and factually insufficient
to support her conviction.  We affirm.

Facts

In April 2005, Harris County Sheriff’s
Deputy T. Hodge, a process server for County Court 10, drove to Dickerson’s
residence to serve a subpoena.  Deputy
Hodge, dressed in full uniform, arrived at the residence around 1:00 p.m.  Another car pulled into Dickerson’s driveway
at the time Hodge arrived, driven by a woman later identified as Theresa
Mungle, the sister of Dickerson’s boyfriend. 
Deputy Hodge exited her car, asked Mungle a few questions, and then
noticed a large Akita
dog at the side of the house.  Dickerson
stood near two men who were laying cobblestone near the front door of the
house.  Hodge asked Dickerson to secure
the dog.  Hodge also told Dickerson that
she was there to serve her with a subpoena. 









          Mungle
and Hodge both testified that Dickerson then began to yell at Hodge using
profanity, racial epithets, and physical gestures, repeatedly telling Hodge to
“get off” her property.  The dog became
increasingly defensive and began growling and barking incessantly.  Throughout the entire exchange, Deputy Hodge
repeatedly asked Dickerson to restrain her dog. 
Dickerson continually refused, claiming that Hodge was the one trespassing
and that she should get off her property. 
Frightened by the dog’s aggressive behavior, Deputy Hodge gave the
subpoena to Mungle to deliver.  After
receiving the subpoena from Mungle, Dickerson threw it on the ground.  Prompted by the dog’s violent behavior and
Dickerson’s refusal to accept the subpoena, Hodge walked back down the driveway
towards the street.  According to Deputy
Hodge, Dickerson and her dog followed closely behind, with Dickerson still
cursing and the dog still barking.

Hodge called for backup on her police
radio and stated aloud to her supervisor that she needed help and might have to
shoot the dog.  She also reached for her
gun but did not pull it out of the holster. 
At this time, Dickerson finally grabbed her dog’s collar in an effort to
control him.  Dickerson was unable to
restrain the dog so Mungle asked one of the construction workers for
assistance.  The construction worker
chained the dog in the yard and Dickerson locked herself in the house.  Four Humble police officers arrived at the
scene shortly thereafter.  








          Dickerson’s
testimony at trial was somewhat different from that of Hodge and Mungle.  Dickerson contends that, on the afternoon in
question, she was inside her house when she saw Mungle’s car and another black
SUV pull into her driveway.  Dickerson
watched the two women talking and walked outside to greet them, assuming that
Deputy Hodge was Mungle’s friend.  As
soon as Dickerson walked out of the door, Deputy Hodge began screaming at her
to chain the dog.  Dickerson admits that
the dog was barking, but in a non-violent manner.  She explained to Deputy Hodge that the dog
does not bite, but she had to raise her voice to communicate because Hodge was
yelling so loudly.  Dickerson contends
that she never used profanity or physical gestures toward the deputy.  When Hodge reached for her gun, Dickerson
became afraid that the deputy would shoot both her and her dog.  Dickerson maintains that this is the first
time she realized that Deputy Hodge was a peace officer.  At this time, the construction worker helped
Dickerson chain the dog in the yard. 
Dickerson retreated to her house and watched the four Humble police
officers arrive, although none of them came to the door to talk to her.  

          Dickerson
maintains that she did not realize that Deputy Hodge was at her house to serve
a subpoena until Mungle gave it to her. 
She also claims that she never threw it on the ground.  Dickerson contends that if the deputy had
told her that she was there to serve a subpoena, she would have accommodated
the deputy in any manner possible. 
Instead, Deputy Hodge never told Dickerson about the subpoena and then
threatened to shoot her dog, so Dickerson’s focus was on protecting her
pet.  Mungle and Dickerson both testified
that no more than thirty seconds elapsed from the time the incident became very
“heated,” until Hodge reached for her gun and Dickerson finally made an effort
to restrain the dog.  Hodge testified
that about ten minutes elapsed from the time she “perceived danger,” until
Dickerson finally made an effort to restrain her dog.  

Interference with Public Duties

          In her
first and second issues,
Dickerson contends the evidence is legally and factually insufficient to
support her conviction for interference with public duties.  A person commits the offense of interference
with public duties if the person with criminal negligence interrupts, disrupts,
impedes, or otherwise interferes with a peace officer while the peace officer
is performing a duty or exercising authority imposed or granted by law.  Tex.
Pen. Code Ann. § 38.15(a)(1). 
It is a defense to prosecution if the interruption, disruption,
impediment, or interference consisted of speech only.  Id.
§ 38.15(d).  

A person acts with criminal negligence, or is criminally
negligent, with respect to circumstances surrounding his conduct or the result
of his conduct when he ought to be aware of a substantial and unjustifiable
risk that the circumstances exist or the result will occur.  The risk must be of such a nature and degree
that the failure to perceive it constitutes a gross deviation from the standard
of care that an ordinary person would exercise under all the circumstances as
viewed from the actor’s standpoint.   

 

Tex. Pen. Code Ann. § 6.03(d) (Vernon 2003).

Legal Sufficiency

          Standard
of Review

When evaluating the legal sufficiency of the
evidence, we view the evidence in the light most favorable to the verdict and
determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S.
307, 319, 99 S. Ct. 2781, 2789 (1979); Drichas v. State, 175 S.W.3d 795, 798 (Tex. Crim. App.
2005).  The standard is the same for both
direct and circumstantial evidence cases. 
King v. State,
895 S.W.2d 701, 703 (Tex. Crim. App. 1995). 
We do not resolve any conflict of fact, weigh any evidence, or evaluate
the credibility of any witnesses, as this was the function of the trier of
fact.  See Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App.
1999); Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App.
1992); Matson v. State,
819 S.W.2d 839, 843 (Tex. Crim. App. 1991). 
Instead, our duty is to determine whether both the explicit and implicit
findings of the trier of fact are rational by viewing all the evidence admitted
at trial in the light most favorable to the verdict.  See Adelman, 828 S.W.2d at 422.  In
so doing, any inconsistencies in the evidence are resolved in favor of the
verdict.  Matson, 819 S.W.2d at 843.

          Legally Sufficient Evidence

          Dickerson’s first issue is that the
evidence is not legally sufficient to support her conviction for interference
with public duties.  Specifically,
Dickerson first challenges the legal sufficiency of the evidence to support
every element of the offense of interference with public duties.  Tex.
Pen. Code Ann. § 38.15(a)(1) (stating that person commits offense of
interference with public duties if person with criminal negligence interrupts,
disrupts, impedes, or otherwise interferes with peace officer while peace
officer is performing duty or exercising authority imposed or granted by
law).  Viewing the evidence in the light
most favorable to the verdict, a rational trier of fact could have found beyond
a reasonable doubt that Dickerson committed the offense of interference with
public duties.  

Deputy Hodge testified that she is a
Harris County Sherriff’s Deputy.  A
sheriff’s deputy is a peace officer according to article 2.12 of the Texas Code
of Criminal Procedure.  Tex. Code Crim. Proc. Ann. art. 2.12(1)
(Vernon Supp.
2005).  Hodge also testified that she is
performing a duty or exercising authority imposed or granted by law when she
serves a subpoena.  See id. art. 2.13(b)(2)
(Vernon 2005); id. arts. 24.01(b)(1),
24.04(a)(2) (Vernon 1989 & Supp. 2005).

The record also contains legally
sufficient evidence to support a finding that Dickerson interrupted, disrupted,
impeded, or otherwise interfered with Deputy Hodge in the performance of her
legally imposed duty to serve Dickerson with the subpoena.  Hodge and Mungle both testified that Hodge
informed Dickerson that she was trying to serve her with a subpoena, and that
she needed to restrain her dog. 
Dickerson responded with commands to “get your black ass off my
property,” as well as aggressive hand gestures and the use of profanity.  When Hodge tried to retreat to the
street, Dickerson actively followed Hodge down the driveway with her dog at her
side, cursing and yelling, and making the dog more agitated.  Dickerson and the dog only halted their
pursuit when Hodge left the property and was on the street.  Dickerson
effectively used her dog to force Hodge to leave her property by walking
towards Hodge with the agitated and angry dog at her side.  Hodge also testified that Dickerson’s
actions interrupted, disrupted, impeded, and interfered with her ability to
serve the subpoena.  See Berrett v. State, 152 S.W.3d 600, 604–05 (Tex. App.—Houston
[1st Dist.] 2004, pet. ref’d) (holding that evidence
of defendant’s conduct in filming his encounter with police and repeatedly
moving his arm out of officer’s reach to prevent officer from placing him in
handcuffs, despite officer’s telling defendant more than fifteen times to place
his hand behind his back, was legally and factually sufficient to support
conviction for interference with public duties); Key v. State, 88 S.W.3d 672, 676 (Tex.
App.—Tyler 2002, pet. ref’d) (holding that evidence was legally sufficient to
support conviction for interference
with public duties when officer
testified that defendant was agitated and that he and another officer attempted
to calm defendant to investigate disturbance call, that he ordered defendant to
remain on sidewalk to prevent defendant from assaulting individual, and that
defendant stepped off of sidewalk toward individual six times prior to being
placed under arrest, and second police officer confirmed officer’s testimony).  Viewing the evidence in the light most
favorable to the verdict, we hold that the record contains legally sufficient
evidence to support a finding that Dickerson interrupted, disrupted, impeded,
and interfered with Hodge’s duty to serve the subpoena.

The record also contains legally
sufficient evidence to support a jury finding of criminal negligence.  Dickerson contends that because the dog had
never exhibited violent behavior prior to this incident, and because she was on
her own property, her conduct demonstrates that she exercised ordinary care
during this incident.  

To support a finding of criminal
negligence, “[t]he State does not have to prove that [Dickerson] was aware of a
substantial and unjustifiable risk, rather the State has to prove that
[Dickerson] ought to have been aware of a substantial and unjustifiable
risk.”  Lopez v. State, 630 S.W.2d
936, 940 (Tex. Crim. App. 1982) (emphasis added).  Hodge and Mungle both testified that
Dickerson refused to restrain her dog after repeated requests from Hodge.  They also testified that the dog visibly
frightened Deputy Hodge, so much so that Hodge retreated down the driveway and
eventually reached for her gun. 
Dickerson’s yelling also exacerbated her dog’s aggressive behavior,
making the situation even more dangerous. 
We conclude that the record contains legally sufficient evidence to
support a finding that Dickerson ought to have been aware that there was a
substantial and unjustifiable risk in failing to secure her dog and using the
dog to force Deputy Hodge off her property, and that her failure to perceive
that risk constituted a gross deviation from the standard of care an ordinary
person would have exercised under like circumstances.  

Finally, Dickerson contends the
evidence presented at trial is legally insufficient to support a finding that
her conduct was not “speech only.”  Tex. Pen. Code Ann. § 38.15(d) (“It is a
defense to prosecution under this section that the interruption, disruption,
impediment, or interference alleged consisted of speech only.”).  Dickerson’s speech during the incident has
nothing to do with the charged offense of interference with public duties.  As discussed above, the record contains
legally sufficient evidence to support a finding that Dickerson failed to
restrain her dog after repeated requests from Hodge, and forced Hodge off her
property by following Hodge to the street with the agitated dog at her
side.  Dickerson’s failure to restrain
the dog and her affirmative act of forcing Hodge off her property constitute
the culpable conduct for which the State charged Dickerson with interference
with public duties.  This conduct does
not constitute speech.  See Barnes
v. State, No. PD-0939-05, 2006 WL 1083968, at *4
(Tex. Crim. App. Apr. 26, 2006) (holding that mother’s shout to her
seven-year-old son to run from police did not constitute “speech only” for
purposes of interference with public duties conviction); Berrett, 152 S.W.3d at 604–05 (holding that defendant’s spoken
refusals to comply with commands of police officer were not conduct used to
convict him of interference with public duties; rather, culpable conduct was
his videotaping his arrest and continually moving his arm away when officer
tried to put him in handcuffs). 
Dickerson’s spoken refusals are irrelevant; Dickerson completed her
crime when she did not take action in response to Deputy Hodge’s repeated requests
and affirmatively forced Hodge off the property by following her down the
driveway with her angry dog at her side. 
Thus, a rational juror could have found beyond a reasonable doubt that
Dickerson’s conduct did not constitute “speech only.”  Tex. Pen. Code Ann. §
38.15(d).

Voluntariness

Dickerson’s second contention is that
the evidence is not legally sufficient to support her conviction for
interference with public duties because the record contains no evidence that
her actions or omissions were voluntary. 
The Texas Penal Code provides that certain conditions must be met before
a person can be held criminally accountable for his or her conduct.  See
Tex. Pen. Code Ann.
§ 6.01(a) (Vernon 2003).  “A person commits an offense only if he voluntarily engages
in conduct, including an act, an omission, or possession.”  Id.  “Voluntarily” as used in section 6.01(a) means
“the absence of an accidental act, omission or possession,” and only refers to
one’s physical bodily movements.  Id.; Brown v. State, 89 S.W.3d 630, 633
(Tex. Crim. App. 2002); Alford v. State, 866 S.W.2d 619, 624 n.8 (Tex. Crim. App. 1993) (“Because
‘voluntarily’ means the absence of accidental act, omission or
possession, it is not a fact that the State must prove in every case.  Rather, the State need not prove
voluntariness unless the evidence raises the issue of accident, in which case
the State must disprove the theory of accident beyond a reasonable doubt.”).

Viewing the evidence in
the light most favorable to the verdict, the record contains legally sufficient
evidence to support a finding that Dickerson’s failure to restrain her dog was
voluntary and not an accident.  Hodge and
Mungle both testified that in response to Hodge’s requests that she restrain
her dog, Dickerson replied that she would not tie up her dog because the dog
was at home and Hodge was the one trespassing. 
This testimony affirmatively demonstrates that Dickerson understood
Hodge’s request and “voluntarily” refused to comply with it.  See Alford, 866 S.W.2d at 624
n.8.  In addition, Dickerson’s
affirmative act of following Hodge to the street with the agitated dog at her
side was a “voluntary” act as well.  Id.; see also Calhoun v. State, 951 S.W.2d 803, 809 (Tex. App.—Waco
1997, pet. ref’d) (holding evidence was legally sufficient to support finding
that defendant voluntarily burned child with scalding water and injury was not accident);
Molinar v. State, 910 S.W.2d 572,
584–85 (Tex. App.—El Paso 1995, no pet.) (holding evidence was legally
sufficient to support finding that defendant voluntarily stabbed victim).  Thus, the record contains legally sufficient
evidence to support a finding that Dickerson’s actions were voluntary.     

No Duty

Dickerson’s third contention is that
the evidence is not legally sufficient to support her conviction for
interference with public duties because she had no duty to comply with Hodge’s
request that she restrain her dog.  As stated
in the previous section, “[a] person commits an
offense only if he voluntarily engages in conduct, including an act, an
omission, or possession.”  Tex. Pen. Code Ann.
§ 6.01(a).  “A person who omits to perform an act does not
commit an offense unless a law as defined by Section 1.07 provides that the
omission is an offense or otherwise provides that he has a duty to perform the
act.”  Id.
§ 6.01(c).  Dickerson contends that
because her conduct consisted of an omission to act, she cannot be convicted of
interference with public duties unless a law specifically provides that she had
a duty to restrain the dog at the request of Hodge.    

Hodge and Mungle testified that after Hodge
asked Dickerson to restrain her dog, Dickerson began yelling and commanding
Hodge to “get off” her property.  When
Hodge tried to retreat to the street, Dickerson actively followed Hodge down
the driveway with the dog at her side, cursing and yelling, and making the dog
more agitated.  Dickerson and the dog only halted their
pursuit when Hodge left the property and was on the street.  Dickerson
effectively used her dog to force Hodge to leave her property by walking
towards Hodge with the agitated and angry dog at her side.  This voluntary action interrupted, impeded,
disrupted, and interfered with Hodge’s duty to deliver the subpoena.  See
Tex. Pen. Code Ann.
§ 38.15(a)(1).  We conclude
that Dickerson’s conduct, in these circumstances, constitutes voluntary action, not a mere omission to act.  See
Berrett, 152
S.W.3d at 604 (holding that defendant’s conduct in
filming his encounter with police and repeatedly moving his arm out of
officer’s reach to prevent officer from placing him in handcuffs, despite
officer’s telling defendant more than fifteen times to place his hand behind
his back, constituted voluntary action, not mere omission to act).  As a result, the State did not have to prove
that Dickerson had a duty to accede to Deputy Hodge’s requests.  See
id.

 

Factual Sufficiency

          Standard
of Review

When conducting a factual sufficiency
review, we view all of the evidence in a neutral light.  Ladd v. State,
3 S.W.3d 547, 557 (Tex. Crim. App. 1999).  We will set the verdict aside
only if (1) the evidence is so weak that the verdict is clearly wrong and
manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence.  Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000).  Under the first prong of Johnson, we cannot conclude that a
conviction is “clearly wrong” or “manifestly unjust” simply because, on the
quantum of evidence admitted, we would have voted to acquit had we been on the
jury.  Watson v. State, No.
PD-469-05, 2006 WL 2956272, at *10 (Tex. Crim. App. Oct. 18,
2006).  Under the second prong of Johnson, we cannot declare that a
conflict in the evidence justifies a new trial simply because we disagree with
the jury’s resolution of that conflict.  Id. 
Before finding that evidence is factually insufficient to support a verdict
under the second prong of Johnson, we must be able to say, with some
objective basis in the record, that the great weight and preponderance of the
evidence contradicts the jury’s verdict.  Id.
 In conducting a factual sufficiency review, we must also discuss the
evidence that, according to the appellant, most undermines the jury’s
verdict.  See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App.
2003).  

         
We may not re-weigh the evidence and substitute our judgment for that of the
fact-finder.  King v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000).  The fact-finder alone
determines what weight to place on contradictory testimonial evidence because
that determination depends on the fact-finder’s evaluation of credibility and
demeanor.  Cain v. State, 958 S.W.2d 404, 408–09 (Tex. Crim. App.
1997).  As the determiner of the credibility of the witnesses, the
fact-finder may choose to believe all, some, or none of the testimony
presented.  Id.
at 407 n.5.

          Receipt of the Subpoena

Dickerson’s second issue is that the
evidence is not factually sufficient to support her conviction for interference
with public duties.  Specifically,
Dickerson first maintains that the evidence is not factually sufficient to
uphold her conviction because her ultimate receipt of the subpoena proves that
she did not interfere with the deputy’s lawful duty to serve the subpoena. 

          The
relevant language of section 38.15 provides that a person commits the offense
of interference with public duties if she “interrupts, disrupts, impedes, or
otherwise interferes” with the performance of the duty.  Tex.
Pen. Code Ann. § 38.15(a). 
Dickerson’s eventual receipt of the subpoena does not prove that her
conduct did not affirmatively interfere with Hodge’s performance of the public
duty.  Her refusal to restrain the
intimidating dog, along with her own aggressive behavior, created a situation
that interrupted, disrupted, impeded, and interfered with Deputy Hodge in the
performance of her public duty.  Thus,
the evidence is factually sufficient to support a finding that Dickerson
interrupted, disrupted, impeded, and interfered with Hodge’s ability to perform
her duty to serve the subpoena.  The fact
that Dickerson eventually obtained the subpoena does not negate her
interference with its service.  See Berrett,
152 S.W.3d at 604 (holding that defendant’s eventual
arrest did not preclude conviction for interference with public duties when he
filmed his encounter with police and repeatedly moved his arm out of officer’s
reach to prevent officer from placing him in handcuffs, despite officer’s
telling defendant more than fifteen times to place his hand behind his back).

          Criminal Negligence

Dickerson’s second contention is that
the evidence is factually insufficient to support a finding of criminal
negligence.  Dickerson specifically
points to the testimony of the three witnesses regarding the length of the incident.  Mungle and Dickerson both testified that no
more than thirty seconds elapsed from the time the incident became very
“heated,” until Hodge reached for her gun and Dickerson finally made an effort
to restrain the dog.  Hodge testified
that about ten minutes elapsed from the time that she “perceived danger,” until
Dickerson finally made an effort to restrain her dog.  Dickerson contends that this apparent
discrepancy lends support to her version of the facts and demonstrates that the
evidence is factually insufficient to support a jury finding of criminal
negligence.  According to Dickerson, if
the incident lasted only thirty seconds, her version of the facts becomes more
plausible.  

We conclude that the record contains
factually sufficient evidence to support a finding of criminal negligence.  The testimony of Mungle and Hodge does not
contradict with regard to time because they testified to the length of time
between different events.  In addition,
the remainder of their testimony is substantially the same, especially with
regard to Dickerson’s repeated refusals to restrain her dog and Dickerson’s
statements to Hodge during the incident. 
Mungle’s and Hodge’s testimony indicates that (1) Dickerson knew that
Hodge was attempting to serve a subpoena, (2) Dickerson understood the purpose
of Hodge’s requests to restrain the dog, and (3) Dickerson’s refusal to
restrain her dog was a voluntary action designed to force Hodge off her
property.  Dickerson’s testimony, on the
other hand, suggests that the entire incident was a misunderstanding, fueled by
Hodge’s irrational and excessive behavior with regard to the dog.  While Dickerson’s testimony is in direct
contravention to the testimony of Mungle and Hodge, the jury was free to
disregard any testimony that it found to be not credible.  See Cain, 958 S.W.2d
at 407 n.5.

We conclude that the record contains
factually sufficient evidence to support a finding that Dickerson ought to have
been aware that there was a substantial and unjustifiable risk in failing to
secure her dog and using the dog to force Deputy Hodge off her property, and
that her failure to perceive that risk constituted a gross deviation from the
standard of care an ordinary person would have exercised under like
circumstances.  When viewed in a neutral
light, the evidence is not so weak that the verdict is
clearly wrong and manifestly unjust, and the verdict is not against the great
weight and preponderance of the evidence.  Johnson, 23 S.W.3d at 11. 
Accordingly, we hold that the evidence is factually sufficient to
support the jury finding of criminal negligence.

                                                          

 

 

 

 

Conclusion

          We hold that the evidence is legally
and factually sufficient to support Dickerson’s conviction for interference
with public duties.  We therefore affirm
the judgment of the trial court.

 

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Alcala and Bland.

Do not publish.  Tex.
R. App. P. 47.2(b).