# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON REMAND

## NO. 03-03-00533-CR

**Carolyn Machalec Barnes, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY
## NO. 02-1777-1, HONORABLE WILLIAM E. BENDER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Carolyn Machalec Barnes guilty of interfering with a peace officer and assessed a thirty-day jail term and a $1000 fine. *See* Tex. Penal Code Ann. § 38.15(a)(1) (West Supp. 2006). On the jury's recommendation, the trial court suspended imposition of sentence and placed appellant on community supervision.

On original submission, this Court concluded that the evidence was legally insufficient to sustain the jury's verdict, reversed appellant's conviction, and rendered a judgment of acquittal. *Barnes v. State*, 166 S.W.3d 416, 420 (Tex. App.—Austin 2005). On the State's petition for discretionary review, the court of criminal appeals reversed our judgment and remanded the appeal to us for consideration of appellant's remaining points of error. *Barnes v. State*, 206 S.W.3d 601, 606 (Tex. Crim. App. 2006). These points are: denial of a speedy trial; unlawful

amendment of the information; denial of discovery; unconstitutionality of section 38.15 and of this prosecution; refusal to suppress evidence; factually insufficient evidence; denial of motions for mistrial and directed verdict; and cumulative error. We will overrule these points and affirm the conviction.

### *Amendment of Information*

The original complaint and information were filed on April 17, 2002. They alleged that on or about March 6, 2002, appellant:

> did then and there while M. Koenig, a peace officer, was performing a duty or exercising authority imposed or granted by law, to wit: issuing a traffic citation, with criminal negligence, interrupt, disrupt, impede, or interfere with the said M. Koenig by refusing to comply with M. Koenig's lawful order to roll down her window or unlock and open her door.

On June 23, 2003, the day appellant's trial was set to begin, the State moved to amend the information. The motion was granted over appellant's objection. The court's order granting the motion reads as follows:

> Having heard the State's motion to amend the information, it is hereby ordered that the information in the above-entitled cause be amended to read as follows: to delete on the filed information the paragraph beginning "while M. Koenig, a peace officer" and ending with "open her door" and replace it with the following: "with criminal negligence interrupt, disrupt, impede, and otherwise interfere with the said M. Koenig by driving her vehicle forward while the said defendant was lawfully detained; and by directing her minor child to leave her vehicle and run in an area near traffic; and by continuously refusing to obey orders regarding officer safety, while M. Koenig, a peace officer, was performing a duty or exercising authority imposed or granted by law, to wit: to preserve the peace within the officer's jurisdiction."

After granting the motion, the court reset the cause for trial in August 2003.

2

Appellant urges that the original information was not effectively amended because there was no interlineation of the new language on the face of the original information or on a photocopy of the original that was incorporated into the clerk's file. *See Riney v. State*, 28 S.W.3d 561, 565-66 (Tex. Crim. App. 2000). In *Riney*, the court of criminal appeals overruled its prior holding that an indictment or information could be amended only by physically altering the original charging instrument. *Id*. at 565. The court held that physical interlineation of the original is an acceptable but not the exclusive means of effecting an amendment. *Id*. In *Riney*, a photocopy of the original instrument on which the State had interlineated the new language, when incorporated into the record under the direction of the trial court, was held sufficient to accomplish the amendment. *Id*. at 565-66.

Under *Riney*, a charging instrument can be amended by altering the face of the original instrument or by incorporating into the trial court's file a separate document with the text of the amended charging language. *Barfield v. State*, 202 S.W.3d 912, 919 (Tex. App.—Texarkana 2006, pet. ref'd). In the cause before us, the trial court did not merely grant the State's motion to amend. *See Riney*, 28 S.W.3d at 566 (holding that neither motion to amend nor trial judge's granting of motion constitute amendment). Instead, the clerk's record contains the original information, the State's motion to amend specifically setting out the proposed amendment, and the court's order, quoted above, that also specifically sets out the amended language. This was adequate to amend the information. *See Barfield*, 202 S.W.3d at 921.

Appellant also contends that the amendment was not timely under article 28.10. *See* Tex. Code Crim. Proc. Ann. art. 28.10 (West 2006). This statute permits the amendment of an

3

indictment or information prior to the day the trial commences and after the trial commences, but does not permit an amendment on the day of trial but before the trial commences. *State v. Murk*, 815 S.W.2d 556, 558 (Tex. Crim. App. 1991); *Sodipo v. State*, 815 S.W.2d 551, 556 (Tex. Crim. App. 1991) (op. on reh'g). This contention is without merit because appellant's trial did not begin on the day of the amendment. *Sanders v. State*, 978 S.W.2d 597, 599 (Tex. App.—Tyler 1997, pet. ref'd); *see Sanchez v. State*, 138 S.W.3d 324, 329 (Tex. Crim. App. 2004).

Finally, appellant argues that the amendment prejudiced her substantial rights because the amended information is not supported by a complaint. *See* Tex. Code Crim. Proc. Ann. art. 28.10(c). When the original complaint and information are proper, the trial court has jurisdiction over the case and a new complaint is not required to amend the information. *Hess v. State*, 953 S.W.2d 837, 840 (Tex. App.—Fort Worth 1977, pet. ref'd). It is clear from the record that the amended information was based on the same occurrence and charged the same statutory offense, and that it merely altered the factual allegations. Appellant had two months to prepare for trial on the new information. No prejudice to her substantial rights is shown. *See Flowers v. State*, 815 S.W.2d 724, 729 (Tex. Crim. App. 1991).

Point of error two is overruled.

### *Constitutional Issues*

Appellant contends that the amended information violated the constitutional separation of powers. *See* Tex. Const. art. II, § 1. This argument is based on the allegation in the amended information that Koenig "was performing a duty or exercising authority imposed or granted

4

by law, to wit: to preserve the peace within the officer's jurisdiction," a clear reference to article 2.13 of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 2.13(a) (West 2005). Appellant argues that the drafters of the amended information performed a legislative function by incorporating a portion of article 2.13 in an information alleging a violation of penal code section 38.15.

Section 38.15(a)(1) provides that it is an offense to interfere with a peace officer while the officer is performing a duty or exercising authority imposed or granted by law. Article 2.13 defines the duties and powers of peace officers, including the duty to preserve the peace within an officer's jurisdiction. By incorporating the duty defined in article 2.13, the amended information merely made specific that which was already stated in section 38.15(a)(1). We find no violation of the separation of powers.

Appellant further contends that section 38.15 is unconstitutionally vague and overbroad. It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A criminal law must be sufficiently clear in at least three respects: (1) a person of ordinary intelligence must be given a reasonable opportunity to know what is prohibited; (2) the law must establish determinate guidelines for law enforcement; and (3) where First Amendment freedoms are implicated, the law must be sufficiently definite to avoid chilling protected expression. *Id*. at 108-09; *Long v. State*, 931 S.W.2d 285, 287 (Tex. Crim. App. 1996). When a vagueness challenge involves First Amendment considerations, a criminal law may be held facially invalid even though it may not be unconstitutional as applied to the defendant's conduct. *Long*, 931 S.W.2d at 288. If

5

First Amendment rights are not implicated, a vagueness challenge will be sustained only if the statute is vague in all its applications. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982). Absent First Amendment considerations, a person whose conduct is clearly proscribed by a statute cannot complain that it is vague as applied to others. *Id*.

A statute is impermissibly overbroad if, in addition to proscribing activity that may be forbidden constitutionally, it sweeps within its coverage a substantial amount of expressive activity protected by the free speech guarantee of the First Amendment. *Morehead v. State*, 807 S.W.2d 577, 580 (Tex. Crim. App. 1991); *State v. Markovich*, 34 S.W.3d 21, 23 (Tex. App.—Austin 2000), *aff'd*, 77 S.W.3d 274, 280 (Tex. Crim. App. 2002). A person whose own expressive activity may validly be prohibited is permitted to challenge a statute as overbroad for the benefit of society, to prevent the statute from chilling the constitutionally protected speech of others not before the court. *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973); *Commission for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 435 (Tex. 1998); *Markovich*, 34 S.W.3d at 24. An overbroad statute may not be enforced, even against expressive activity that could constitutionally be prohibited by a more narrowly drawn statute. *Benton*, 980 S.W.2d at 435.

Appellant argues that the State sought to criminalize speech in violation of the First Amendment by alleging that she interfered with the officer "by directing her minor child to leave her vehicle and run in an area near traffic." The court of criminal appeals held, however, that this was conduct rather than speech protected by the First Amendment. *Barnes*, 206 S.W.3d at 605-06. It is a defense to prosecution under section 38.15 that the alleged interference with a peace officer consisted of speech only. Tex. Penal Code Ann. § 38.15(d). This provision is apparently intended

to prevent the application of the statute to persons exercising their free speech right. *See Barnes*, 206 S.W.3d at 606. Appellant has not demonstrated that section 38.15, on its face or as applied to her, sweeps within its coverage a substantial amount of expressive activity protected by the First Amendment.

Under the circumstances, appellant's vagueness challenge must fail unless she demonstrates that there is no set of circumstances under which the statute would be valid. *United States v. Salerno*, 841 U.S. 739, 745 (1987). In other words, she must show that the statute is vague in all of its applications. *Village of Hoffman Estates*, 455 U.S. at 495. The first step in this determination is to ask whether the statute is impermissibly vague as applied to appellant's specific conduct. *Id*; *Bynum v. State*, 767 S.W.2d 769, 773-74 (Tex. Crim. App. 1989).

Appellant's vagueness challenge centers on the allegation that she interfered with the officer's duty "to preserve the peace." She argues that the use of this phrase in the amended information expands the scope of section 38.15(a)(1) far beyond any reasonable reading of the statute. She urges that a person of ordinary intelligence would not understand that she could be prosecuted for interfering with an officer's duty "to preserve the peace" by driving forward slightly after being stopped for speeding, directing her minor child to leave her vehicle and run to a nearby store, or by refusing to obey orders regarding officer safety.

We believe that a person of ordinary intelligence would understand that a peace officer has a duty to preserve the peace. A person of ordinary intelligence would also understand that this duty encompasses the enforcement of traffic laws, which in turn entails the detention of motorists for the purpose of issuing citations. Finally, we conclude that a person of ordinary

intelligence would understand that she would unjustifiably risk interfering with this duty by moving her vehicle forward, by refusing to stop moving when ordered to do so, and by failing to keep her hands in view as instructed by the officer. Appellant has not demonstrated that section 38.15 is impermissibly vague as applied to her conduct in this case.

Point of error four is overruled.

### *Factual Sufficiency*

We will not restate the pertinent facts, which were detailed in our original opinion and in the opinion of the court of criminal appeals. That court held that appellant's conduct "disrupted" and "imped[ed] [the officer's] attempt to efficiently and speedily serve her with a citation." *Barnes*, 206 S.W.3d at 605. This, the court held, was legally sufficient evidence to sustain appellant's conviction for interfering with the officer's duties. *Id*. We now address appellant's contention that the evidence is factually insufficient.

When there is a challenge to the sufficiency of the evidence to sustain a criminal conviction, the question presented is whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (legal sufficiency); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981) (legal sufficiency); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000) (factual sufficiency). In a factual sufficiency review, all the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). The evidence will be deemed factually insufficient if the evidence supporting the verdict is so weak

8

as to make the finding of guilt clearly wrong or manifestly unjust, or if the verdict is against the great weight and preponderance of the available evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Johnson*, 23 S.W.3d at 11.

Applying the above standard of review to the evidence before us, we conclude that the jury's finding that appellant interfered with the officer's duties is not clearly wrong or manifestly unjust, nor is it against the great weight and preponderance of the available evidence. Point of error six is overruled.

### *Speedy Trial*

Appellant contends that she was denied her constitutional right to a speedy trial. *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10. In determining whether a defendant has been denied this right, a court must balance four factors: (1) length of the delay, (2) reason for the delay, (3) assertion of the right, and (4) prejudice to the accused. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Johnson v. State*, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997). The application of these factors is a legal question subject to de novo review. *Johnson*, 954 S.W.2d at 771.

### *Length of Delay*

Appellant's trial began on August 11, 2003, seventeen months following her arrest. This delay exceeds that needed to trigger a full speedy trial inquiry. *See Doggett v. United States*, 505 U.S. 647, 651-52 (1992); *State v. Munoz*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999). It is a factor that weighs against the State. *Zamorano v. State*, 84 S.W.3d 643, 649 (Tex. Crim. App. 2002).

9

*Reason for Delay*

The State bears the burden of justifying the delay. *Turner v. State*, 545 S.W.2d 133, 137 (Tex. Crim. App. 1976). In this case, the State relies on the procedural history of this prosecution, which reflects that during the seventeen months between appellant's arrest and her trial, four different judges were assigned to the case and appellant filed voluminous pleadings. However, an examination of the record shows that most of the delay must be attributed to the State.

**March 6, 2002, to October 29, 2002.** Appellant was arrested on March 6, but she was not formally charged until April 17, when the information was filed. That same day, Judge Don Higginbotham, to whom this case was originally assigned, recused himself because he had previously represented appellant. The case was reassigned to Judge Kevin Henderson, who continued the case four times, to October 29. There is no explanation for these continuances in the record. This seven-month delay is attributable to the State. *See Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003) (unexplained delay is presumptively unreasonable).

**October 29, 2002, to November 12, 2002.** The first pretrial hearing was held on October 29. By this time, appellant had filed three discovery motions and two motions to dismiss that were themselves largely concerned with discovery issues. The hearing was continued to November 5 to permit appellant to prepare and file an amended motion for discovery. These two weeks are largely chargeable to appellant.

**November 12, 2002, to January 13, 2003.** The State requested a continuance on November 12 and the State is responsible for the resulting delay. In addition, the 2002 election

10

resulted in Judge Suzanne Brooks replacing Judge Henderson. On January 13, Judge Brooks recused herself due to a conflict of interest.

**January 13, 2003, to March 28, 2003.** Judge William E. Bender was assigned to preside over this prosecution after Judge Brooks recused herself. This prompted appellant to file a motion to recuse Judge Bender. The motion was taken up on March 10 and reset for a hearing before the administrative judge on March 28. On the latter date, Judge B. B. Schraub overruled the recusal motion. This two-month delay is attributable to appellant.

**March 28, 2003, to June 23, 2003.** No action was taken in this case during these three months. No reason for this delay is shown, and therefore it is attributable to the State. *See id*.

**June 23, 2003, to August 11, 2003.** The case was set for trial on June 23. On that date, however, the State filed its motion to amend the information. After a hearing and over appellant's vigorous objection, the motion to amend was granted and the cause was reset for trial on August 11. This two-month delay was necessitated by the amendment of the information and is attributable to the State.

Of the seventeen months that passed between appellant's arrest and her trial, only a little over two months are chargeable to her. The remainder of the delay is either unexplained or directly attributable to the State's actions. This factor also weighs against the State.

### *Assertion of Right*

Appellant filed seven motions to dismiss this prosecution in which, among other things, she complained of the delay in bringing her to trial. The first two motions to dismiss, filed on July 1 and August 6, 2002, relied on provisions of the former speedy trial act held

11

unconstitutional in *Meshell v. State*, 739 S.W.2d 246 (Tex. Crim. App. 1987). Each of the other motions to dismiss, filed on March 3, March 28, June 23, July 15, and August 8, 2003, complained that the delay in the trial had denied appellant her Sixth Amendment right to a speedy trial. Under the circumstances in which they were filed, these motions served to alert the trial court and the State of the delay and appellant's lack of acquiescence to it. *See Zamorano v. State*, 84 S.W.3d 643, 651 n.40 (Tex. Crim. App. 2002). Appellant's repeated assertion of her right to a speedy trial weighs in her favor.

### *Prejudice*

The speedy trial right serves to prevent oppressive pretrial incarceration, minimize anxiety and concern resulting from the pending charges, and limit the possible impairment of the defense. *Barker*, 407 U.S. at 532. The first of these interests is not implicated here, as appellant was released on bond soon after her arrest.

Appellant asserts that she was "vexed by the unreasonable delay" of her trial, but there is no evidence before us that appellant suffered any significant emotional distress as a result of the delay. Appellant argues that "the delay caused anxiety and concern especially since the arresting officers had filed a contemporaneous complaint against [appellant] with Child Protective Services." This fact is unrelated to the delay in appellant's trial in this cause.

Excessive delay presumptively prejudices the defense. *Doggett*, 505 U.S. at 655-56. There is, however, no evidence of actual prejudice in this case. This was a simple prosecution involving three principal actors: appellant, the officer who stopped her, and the back-up officer. The entire incident on which the prosecution was based was videotaped. Appellant claims that her

12

defense was impaired "because one of the main witnesses, the minor child's counselor, was no longer available for trial," but there is no evidence of what the counselor would have said or any explanation of how the counselor's testimony would have been relevant to the question of appellant's guilt or innocence as charged. Appellant also claims that the delay resulted in "the spoliation of the exculpatory evidence and other evidence with impeachment value, as well as a substantial and material change in the judge presiding over the case." Appellant does not specify the exculpatory and impeachment evidence that was lost, nor does she explain how the change of judges was prejudicial to her defense.

We conclude that the prejudice factor favors the State.

### Balancing

None of the four factors is either a necessary or sufficient condition to the finding of a deprivation of the speedy trial right, and courts must engage in a difficult and sensitive balancing process in each individual case. *Zamarano*, 84 S.W.3d at 648. In this case, the excessive and largely unjustified delay in the prosecution of this case weighs against the State, especially in light of appellant's repeated assertions of the speedy trial right. On the other hand, there is no evidence that appellant suffered any actual prejudice as a result of the delay, either in the form of pretrial distress and anxiety or in her ability to prepare and present a defense to the charge against her. On balance, we conclude that appellant's constitutional right to a speedy trial was not violated. Point of error one is overruled.

13

*Discovery*

Appellant asserts that the State violated the trial court's discovery orders and article 39.14 by "hiding, secreting and refusing to timely disclose exculpatory or impeachment evidence and witnesses." *See* Tex. Code Crim. Proc. Ann. art. 39.14 (West 2005).

A criminal defendant does not have a general right to discovery of evidence in the State's possession. *Michaelwicz v. State*, 186 S.W.3d 601, 612 (Tex. App.—Austin 2006, pet. ref'd). Limited discovery has been provided by article 39.14. *Id*. At the time of appellant's trial, the decision as to what is discoverable was committed to the discretion of the trial court. *Id*.

Appellant complains that the State failed to comply with an order to provide the names and addresses of witnesses. She acknowledges, however, that the State did file a witness list and the State's only witnesses, the two officers, were on it.

Appellant asserts that the State did not comply with an order to produce a Harris Lanier cassette tape recorder. The record reflects, however, that the State repeatedly told the court that it could not find and had no record of this tape recorder. There is no evidence that the State deliberately failed to comply with the discovery order.

Appellant says that the State did not produce the chain of custody of all evidence or confiscated property, as it was ordered to do. The only exhibits introduced by the State were the videotape and a small wooden baseball bat found in appellant's truck after she was arrested. Appellant unsuccessfully objected to the introduction of these exhibits on the ground that she had not seen the police evidence logs. Both exhibits were properly authenticated, however, and there is no evidence or suggestion by appellant that either item had been tampered with. *See*

14

*Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997) (without evidence of tampering, chain of custody questions go to weight, not admissibility, of exhibit).

Appellant complains that the State failed to comply with an order to produce for an in camera inspection the personnel files of the two officers involved in this case and copies of any and all complaints filed against the officers. At a pretrial hearing, the State announced that it had complied with this order and there is no evidence that it did not.

Appellant complains that the State did not produce any tapes or other documentation of the "interrogation" of her seven-year-old son, who was in the truck with her when it was stopped. There is, however, no evidence that the boy was interrogated.

Appellant has failed to establish that there was an abuse of discretion in the court's discovery rulings or that the State failed to comply with those rulings. Point of error three is overruled.

### *Suppression of Evidence*

Appellant contends that all the evidence in this case—including the officers' testimony, the videotape of the incident, and the baseball bat—should have been suppressed as having been "provoked, caused, or incited by the illegal and unconstitutional actions" of the officers. Appellant does not contest the initial speeding stop, but she argues that the officers' conduct following the initial stop was unconstitutional and otherwise unlawful.

A traffic stop is a seizure for the purposes of the Fourth Amendment and article one, section nine of the Texas Constitution. *Whren v. United States*, 517 U.S. 806, 809 (1996); *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). Like all investigative detentions,

15

a traffic stop must be justified at its inception and reasonably related in scope to the circumstances that justified it in the first place. *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968). The detention must be temporary and last no longer than necessary to effectuate the purposes of the stop. *Florida v. Royer*, 460 U.S. 491, 500 (1983); *Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997). The investigative methods employed should be the least intrusive means reasonably available. *Davis*, 947 S.W.2d at 245.

Appellant argues that the officer had a "mandatory and ministerial duty" to issue the speeding citation and release her. However, the fact that the encounter between appellant and the officers on the afternoon in question was not a typical, brief speeding stop was, in essence, what this prosecution was all about. It was the State's theory that appellant, by her conduct, interfered with the officers and thereby was responsible for what occurred. Appellant, in her defense, claimed that she had been provoked by the unreasonable and unlawful actions of the police. The jury sided with the State, and the court of criminal appeals has determined that the evidence is legally sufficient to support the conclusion that appellant's conduct "disrupted [the officer's] plan to present a speeding citation." *Barnes*, 206 S.W.3d at 605.

Appellant's primary complaint seems to be that Officer Koenig exceeded the legitimate scope of the traffic stop when he opened the passenger side door of her pickup to speak to her. She also complains of the officers' subsequent efforts to prevent her from driving away and to force their way into her pickup truck. *See Barnes*, 166 S.W.3d at 417. Appellant cites no authority supporting her claim that these actions were of constitutional significance under the circumstances. Appellant had already been seized as a result of the traffic stop. *See Whren*, 517 U.S.

16

at 809. Appellant cites no authority supporting her claim that the evidence of her subsequent conduct and statements were unlawfully obtained or otherwise inadmissible. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 5 (West 2005) (admissibility of res gestae statements); *id*. art. 38.23(a) (exclusionary rule).

Appellant complains that the State did not produce a chain of custody for the videotape and the baseball bat. As previously noted while discussing appellant's discovery arguments, these exhibits were properly authenticated and there is no evidence that they had been tampered with. Appellant also contends that her statements on the videotape and the testimony regarding the bat were irrelevant. Evidence is relevant if it has any tendency to make the existence of any fact of consequence more or less probable than it would be without the evidence. Tex. R. Evid. 401. We review a trial court's decision to admit evidence over objection under an abuse of discretion standard. *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). No clear abuse of discretion is shown in the admission of this evidence.

Point of error five is overruled.

### *Mistrial and Directed Verdict*

At the conclusion of argument at the guilt/innocence stage, appellant moved for a mistrial on the ground that the prosecutor had made improper comments. Appellant does not refer us to the statements of which she complains. In any event, to preserve jury argument error, an objection must be voiced at the time the argument is made. *See Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).

Appellant also complains that the court overruled her motion for a directed verdict. This is simply another challenge to the legal sufficiency of the evidence. *Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993).

Point of error seven is overruled.

### Cumulative Error

Appellant's final point of error is, in essence, a restatement of all the errors raised in her preceding points. Multiple errors may be found harmful in their cumulative effect. *Feldman v. State*, 71 S.W.3d 738, 757 (Tex. Crim. App. 2002). But the mere restatement of claimed errors previously discussed and overruled is not cumulative error. *See id*. Point of error eight is overruled.

The judgment of conviction is affirmed.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed on Remand

Filed:   June 7, 2007

Do Not Publish