

# IN THE
# TENTH COURT OF APPEALS

### No. 10-12-00239-CR

**KEIONA DASHELLE NOWLIN,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 19th District Court
### McLennan County, Texas
### Trial Court No. 2011-2523-C1

## MEMORANDUM OPINION

In two issues, appellant, Keiona Dashelle Nowlin, challenges the sufficiency of the evidence supporting her conviction for hindering apprehension, a third-degree felony. *See* TEX. PENAL CODE ANN. § 38.05(a), (d) (West 2011). We affirm.

### I.     SUFFICIENCY OF THE EVIDENCE

In her first issue, appellant contends that the evidence was insufficient to establish that she "warned" Demarcus Degrate of impending discovery or

apprehension.  In her second issue, appellant argues that the evidence is insufficient to prove that she knew that Degrate was charged with a felony offense.

## A. Standard of Review

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction."  *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and improperly admitted.  *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).  And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.  *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793.  Furthermore, direct and circumstantial evidence are treated equally:  "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt."  *Hooper*, 214 S.W.3d at 13.  Finally, it is well established that

the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge does four things: (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. *Id.*

A person is guilty of the offense of hindering apprehension or prosecution if it is shown that,

> with intent to hinder the arrest, prosecution, conviction, or punishment of another for an offense . . . or with intent to hinder the arrest of another under the authority of a warrant or capias, he (1) harbors or conceals the other; (2) provides or aids in providing the other with any means of avoiding arrest or effecting escape; or (3) warns the other of impending discovery or apprehension.

TEX. PENAL CODE ANN. § 38.05(a)(1); *see Hall v. State*, 283 S.W.3d 137, 145-46 (Tex. App.—Austin 2009, pet. ref'd); *see also Albritton v. State*, No. 07-10-00424-CR, 2011 Tex. App. LEXIS 7362, at **6-7 (Tex. App.—Amarillo Aug. 31, 2011, no pet.) (mem. op., not designated for publication). Whether appellant possessed such an intent must ordinarily be established by circumstantial evidence. *See King v. State*, 76 S.W.3d 659, 661 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *see also Patrick v. State*, 906 S.W.2d

481, 487 (Tex. Crim. App. 1995) (noting that intent may be inferred from the acts, words, and conduct of the accused).

Moreover, in this case, the State charged appellant with hindering apprehension, a third-degree felony.[1]  According to the penal code, an offense under section 38.05 is a third-degree felony "if the person who is harbored, concealed, provided with a means of avoiding arrest or effecting escape, or warned of discovery or apprehension is under arrest for, charged with, or convicted of a felony" and the person charged with the offense knew that the person they harbored, concealed, or warned was charged with a felony.  TEX. PENAL CODE ANN. § 38.05(d); *see, e.g., Williams v. State*, No. 05-11-00557-CR, 2012 Tex. App. LEXIS 9018, at *9 n.1 (Tex. App.—Dallas Oct. 31, 2012, no pet.) (mem. op., not designated for publication).

## B.  Facts

At trial, Kevin Scott, a Deputy U.S. Marshal, testified that, on the day in question, he was executing an arrest warrant for Degrate because he was a felon in possession of a firearm.[2]  After receiving information from the Waco Police Department about Degrate's family members and known associates, Deputy Scott proceeded to 2312 North 39th Street to search for Degrate.  Eventually, Deputy Scott observed "two subjects exit—I saw a male and female, both black, exit the back of the residence, [and] mess with the dogs in some fashion . . . ."  Believing the male subject to be Degrate, Deputy Scott called for backup.  Deputy U.S. Marshal Anton Slavich responded to

---

[1] Appellant was also charged with escape; however, she was acquitted of that charge.

[2] Deputy Scott testified that he was serving a Federal Grand Jury warrant and that the warrant was sealed.

Deputy Scott's call for backup. Neither Deputy Slavich nor Deputy Scott knew the identity of Degrate's female companion. Nevertheless, once Degrate and his female companion reached the intersection of 39th Street and Cumberland, Deputy Scott "lit up [his] emergency lights and [his] siren and pulled up behind them and jumped out of the car and shouted 'Police, stop.'" Deputy Scott testified that Degrate "took off running." Deputy Scott chased Degrate.

Upon hearing that deputies were in a foot pursuit with Degrate, Deputy U.S. Marshal Clayton Brown also responded to the scene. When he arrived, Deputy Brown saw Degrate scaling a tall metal fence. In addition, Deputy Brown overheard the female companion scream to Degrate, "Run, baby, run. Get away." Deputy Brown identified the female companion in open court as appellant.

Deputy Slavich recounted that, when he arrived, he observed Degrate and appellant running away from the scene. While Deputy Scott chased after Degrate, Deputy Slavich chased appellant "to try to figure out why she was running from the area." Deputy Slavich eventually caught up with appellant and "told her that [he] was detaining her . . . so [he] could figure out why she was running from the area." Appellant was handcuffed and placed in the front seat of Deputy Slavich's vehicle. As Deputy Slavich "walked around" his vehicle to get in the driver's seat, appellant "undid the seat belt and then turned and opened up the passenger[-]side door on [his] car and then got out and started running." Appellant lost her balance and fell head first on the ground. At this point, appellant was placed under arrest for escape.

Subsequently, appellant was read her *Miranda* rights. Later, appellant was interviewed about the incident. Deputy Slavich was present for the interview and recounted the following:

> She stated that she knew that we were—first off, she stated that she knew that the vehicles that she saw in the area belonged to the Marshals and that she had told Demarcus Degrate that "Those are the Marshals," and when we pulled up on her, she had also stated that she said, "That's the laws. Run."

Deputy Slavich also testified that appellant did not "want her man to get arrested" and that she knew that Degrate was supposed to turn himself in on Wednesday for some kind of bond issue.[3] Specifically, Deputy Slavich mentioned: "Yes. She made that statement to me that he was out on some kind of bond and that he was paying a bondsman and that they were going off his bond and that he was supposed to go turn himself in Wednesday." Appellant also told Deputy Slavich "that there were people in her neighborhood that had photos of all of the Deputy Marshals and photos of our vehicles, and that was how she knew who we were." Deputy Slavich emphasized that appellant admitted that she had warned Degrate that the U.S. Marshals were there to arrest him.

At the conclusion of the evidence, the trial court found appellant guilty of hindering apprehension, a third-degree felony. *See* TEX. PENAL CODE ANN. § 38.05(a)(1), (d). Appellant was subsequently sentenced to four years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

---

[3] Witnesses testified that appellant had Degrate's name tattooed on the front of her chest "just below her clavicle notch."

### C. Discussion

On appeal, appellant asserts that the evidence failed to show that she "warned" Degrate of impending discovery or apprehension; instead, appellant argues that she did not "warn" Degrate because he was already aware of the law-enforcement presence at the time she said something. In making this argument, appellant relies on the testimony of Deputy Scott, whose focus was on apprehending Degrate, not on appellant's actions. Deputy Scott testified that Degrate started running after he told him, "Police, Stop." However, subsequent testimony from Deputies Brown and Slavich indicate that appellant recognized the vehicles of the deputies and that she warned Degrate. Specifically, Deputy Brown overheard appellant tell Degrate to "Run, baby, run. Get away." Moreover, Deputy Slavich recalled that appellant admitted in her interview that she warned Degrate about the law-enforcement presence so that he would not be apprehended. *See, e.g., Barnes v. State*, 206 S.W.3d 601, 606 (Tex. Crim. App. 2006) ("In the First Amendment context, from which the 'speech only' defense was apparently derived, words that are specifically designed to prompt an associate to action are not simply speech, but are conduct that may be treated accordingly."); *King*, 76 S.W.3d at 661 ("Rather, the gravamen of the offense [section 38.05] rests on the intent of the defendant . . . .").

The testimony of Deputies Brown and Slavich is sufficient to establish the essential elements of the crime of hindering apprehension. *See* TEX. PENAL CODE ANN. § 38.05(a). And to the extent that Deputy Scott's testimony conflicts with the testimony of Deputies Brown and Slavich, we note that it is within the province of the factfinder—

the trial court, here—to resolve any conflicts in the testimony, and we are to defer to the factfinder's resolution of such conflicts. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2792-93; *see also Chambers*, 805 S.W.2d at 461. Clearly, by convicting appellant of the charged offense, the trial court resolved any conflicts in the evidence against appellant. Accordingly, we conclude that the record contains sufficient evidence to support a conviction for hindering apprehension. *See* TEX. PENAL CODE ANN. § 38.05(a); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio*, 351 S.W.3d at 894.

However, in her second issue, appellant challenges the sufficiency of the evidence enhancing her conviction for hindering apprehension from a misdemeanor to a third-degree felony under section 38.05(d) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 38.05(d). Specifically, appellant contends that the evidence does not establish that she knew Degrate was charged with a felony, especially considering the warrant was sealed and none of the witnesses testified about the offense for which Degrate was on bond.

As noted above, the evidence established that the marshals sought to arrest Degrate for being a felon in possession of a firearm. Moreover, appellant admitted in her interview with Deputy Slavich that she knew that Degrate had a problem with his bond and that he was supposed to surrender to law enforcement in the coming days. Witnesses testified that appellant had Degrate's name tattooed on her chest, suggesting that she had a close relationship with Degrate. Indeed, Deputy Slavich also testified that appellant did not "want her man to get arrested." Furthermore, appellant told Deputy Slavich that she recognized the vehicles driven by the marshals and that she

had warned Degrate that the U.S. Marshals were there to arrest him. And finally, witnesses testified that appellant also made attempts to escape apprehension by opening the door and running away while still handcuffed.

Based on the foregoing evidence, it was not unreasonable for the trial court to infer that appellant had knowledge that Degrate had committed a felony subject to arrest. *See id.*; *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (stating that the factfinder may infer intent or knowledge from any facts that tend to prove its existence, including the acts, words, and conduct of the accused); *Patrick*, 906 S.W.2d at 487; *King*, 76 S.W.3d at 661; *see also Williams*, 2012 Tex. App. LEXIS 9018, at *9 n.1. As such, we conclude that the record contains sufficient evidence to support appellant's conviction for the third-degree felony of hindering apprehension. *See* TEX. PENAL CODE ANN. § 38.05(d); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio*, 351 S.W.3d at 894. We overrule both of appellant's issues.

## II. CONCLUSION

Having overruled both of appellant's issues on appeal, we affirm the judgment of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
(Chief Justice Gray dissents. A separate opinion will not follow.)*
Affirmed
Opinion delivered and filed May 15, 2014
[CR25]